## HAYS AND WAINWRIGHT v. STATE

(Two Appeals in One Record)

[No. 467, September Term, 1964.]

*Decided November 30, 1965.*

*George L. Russell, Jr.* (on the motion), with whom was *Richard K. Jacobsen* on the brief, for the appellants.

*Morton A. Sacks, Assistant Attorney General* (on the motion), with whom were *Thomas B. Finan, Attorney General, Franklin Goldstein, Assistant Attorney General, Frank H. Newell, III, State's Attorney for Baltimore County,* and *William P. Bolton, Jr., Deputy State's Attorney,* on the brief, for the appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The appellants, Hays and Wainwright, were tried and convicted in the Circuit Court for Baltimore County before Judge

Raine, sitting without a jury, on December 4, 1964, on charges of larceny and receiving stolen goods, and each was sentenced to serve six years in the Maryland House of Correction. Through court-appointed counsel, they appealed to this Court. At the argument before us, on October 14, 1965, the appellants' counsel made an oral motion to reverse the convictions under *Schowgurow v. State,* 240 Md. 121, 213 A. 2d 475 (1965), which was filed on October 11, three days before. We heard arguments on the motion on November 12, together with a similar motion in *Smith v. State,* 240 Md. 464, 214 A. 2d 563 (1965) which was filed today.

The appellants were indicted on November 23, 1964 by the grand jury for Baltimore County, from which any persons who did not believe in the existence of God were excluded. Neither appellant challenged the array, or moved to dismiss the indictment. Their objection was first made at the oral argument in this Court on their appeal. The question before us is whether their convictions must be reversed under *Schowgurow* and *State v. Madison,* 240 Md. 265, 213 A. 2d 880 (1965).

In *Schowgurow,* we held that, under the decisions of the Supreme Court of the United States, the provision of the Maryland Declaration of Rights requiring demonstration of belief in God as qualification for service as a grand or petit juror was invalid. We further held that the legal principle therein set forth shall not apply retroactively, "except for convictions which have not become final before rendition of this opinion." The convictions of the appellants had not become final on that date. *Bell v. State,* 236 Md. 356, 363, 204 A. 2d 54 (1964) and cases therein cited.[1] See also *Belton v. State,* 228 Md. 17, 23, 178 A. 2d 409 (1962). The questions before us are whether, under the Maryland Rules and law, the appellants must be deemed to have waived any objection to the method of selection of the

---

1. In Linkletter v. Walker, 381 U. S. 618, 622 (1965), where a similar announcement of non-retroactivity was made, with the same exception as in Schowgurow, footnote 5 reads as follows:

"By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in Mapp v. Ohio."

grand jury which indicted them because of their failure to raise the objection in the proceedings in the court below; and, if so, whether the presumption of the waiver constitutes a deprivation of due process of law, under *Fay v. Noia,* 372 U. S. 391 (1963) and other decisions of the Supreme Court.

Maryland Rule 885 reads as follows:

"This Court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court; but where a point or question of law was presented to the lower court and a decision of such point or question of law by this Court is necessary or desirable for the guidance of the lower court or to avoid the expense and delay of another appeal to this Court, such point or question of law may be decided by this Court even though not decided by the lower court. Where jurisdiction cannot be conferred on the Court by waiver or consent of the parties, a question as to the jurisdiction of the lower court may be raised and decided in this Court whether or not raised and decided in the lower court."

In a long line of cases, we have held that, under this Rule and its predecessors, a defendant in a criminal prosecution cannot raise for the first time on appeal an objection which was available to him at the trial and which he did not raise below. *Tucker v. State,* 237 Md. 422, 425, 206 A. 2d 691 (1965); *Capparella v. State,* 235 Md. 204, 209, 201 A. 2d 362 (1964) and cases therein cited. It is also the law of this state, however, that if a change in the law after conviction but before final judgment, including the final judgment of the highest court empowered to review the conviction, requires reversal of the judgment, the judgment will be reversed, because the decision must accord with the law as it is at the time of final judgment. *Bell, supra,* and authorities therein cited.

The two rules are not in conflict; on the contrary, in conjunction, they embody the fundaments of fairness. In *Madison v. State,* 200 Md. 1, 8-9, 87 A. 2d 593 (1952), Judge Markell said, for the Court:

> "We are told that failure to raise below questions now raised was due to fear of prejudicing defendant before the jury by objections, especially objections which suggest guilt, e.g., the right of the jury to find a verdict without capital punishment. We are aware that some lawyers include such 'taboos' in their 'trial tactics'— and others, who have attained reputation as trial lawyers, make any objections they deem substantial and press them to the end. We are, however, without authority to review errors in trial tactics of defense counsel or to speculate as to possibilities that different tactics might have produced a different result."

Moreover, it is generally important that this Court should have the benefit of the consideration of the point or question involved by the court below. The gravamen of the concomitant doctrine is set forth in the early case of *Keller v. State,* 12 Md. 322, 326 (1858). In that case, Judge Tuck, for the Court, pointed out that Chief Justice Marshall had stated the doctrine generally in *United States v. Schooner Peggy,* 1 Cranch 103 (1801). Judge Tuck said: "And so if the law be repealed, pending the appeal or writ of error, the judgment will be reversed, because the decision must be in accordance with the law at the time of final judgment."

In this case, as we pointed out in *Schowgurow,* the law in effect at the time of the selection of the grand jury had been part of the Maryland constitution for over a century. That law was changed by this Court, because of the reversal of our decision by the Supreme Court in *Torcaso v. Watkins,* 367 U. S. 488 (1961). The change in the law took place after the appellants had been indicted and convicted, pending their appeal. If the appellants had objected to the method of selection of the grand jury which indicted them before their trial or at any time in the proceedings below, that objection would have been rejected by the lower court, there then being no decision of this Court to the contrary. Unlike the failure to object in the cases which have been cited under Rule 885, the appellants' failure to object was not a waiver of an existing right.

In holding in *Schowgurow* that the legal principle therein set forth should not apply retroactively, we relied, in large part,

upon *Linkletter v. Walker,* 381 U. S. 618 (1965), in which the Supreme Court held that its decision in *Mapp v. Ohio,* 367 U. S. 643 (1961) did not operate retrospectively upon cases finally decided prior to *Mapp.* Basically, the decision as to non-retroactivity in *Linkletter* rested upon the same broad considerations of public policy which we found controlling in *Schowgurow.*[2] However, in *Linkletter,* the Supreme Court, after a full discussion of the principles involved and of the precedents, held that, despite its declaration of non-retroactivity, the *Mapp* decision applied to state court convictions which had not become final before rendition of the *Mapp* opinion. This was the same exception which we made in our declaration of non-retroactivity in *Schowgurow.*

In its discussion of this phase of its opinion in *Linkletter,* the Supreme Court pointed out that:

> "However, we are not here concerned with pure prospectivity since we applied the rule announced in Mapp to reverse Miss Mapp's conviction. That decision has also been applied to cases still pending on direct review at the time it was rendered." 381 U. S. at 622.

In *Schowgurow,* we applied the rule announced in that case in reversing Schowgurow's conviction. In *Linkletter,* the Supreme Court stated, that "Under our cases it appears (1) that a change in law will be given effect while a case is on direct review * * *", citing Chief Justice Marshall's opinion in *Schooner*

---

2. In Linkletter, the Court said:

"Finally, there are interests in the administration of justice and the integrity of the judicial process to consider. To make the rule of Mapp retrospective would tax the administration of justice to the utmost. Hearings would have to be held on the excludability of evidence long since destroyed, misplaced or deteriorated. If it is excluded, the witnesses available at the time of the original trial will not be available or if located their memory will be dimmed. To thus legitimate such an extraordinary procedural weapon that has no bearing on guilt would seriously disrupt the administration of justice." 381 U. S. at 637-38.

*Peggy,* and the cases which followed it. 381 U. S. at 627. It was on the *Schooner Peggy* opinion that the Court largely relied in *Keller* in holding a change in law will be given effect while a case is on direct review.

If we were to hold that the change in law doctrine is not to be given effect in this case where the appellants were convicted before the change, when, clearly, as in *Madison* (filed Nov. 5, 1965), it must be given effect as to defendants who had been indicted but not tried when *Schowgurow* was filed, we would be departing from what we understand to be the interpretation of the exception to the non-retroactivity doctrine by the Supreme Court, whose language, in making the exception, we adopted. Serious questions of constitutional law might well arise in connection with the due process and equal protection of the law clauses of the Fourteenth Amendment. The validity of our declaration of non-retroactivity itself might be made subject to attack by reason of such a discrimination. Moreover, there is a clear line of demarcation between cases where the conviction had become final before *Schowgurow* and cases then pending on appeal. In the first category, the defendants had their day in court under the law as it then existed in Maryland and had existed in this state for over a century; as we pointed out in *Schowgurow,* that decision did not go to the fairness of the conduct of the trial, but was brought about only by the decision of the Supreme Court in *Torcaso,* which was based, not on due process, but on the application of the First Amendment to state action through the Fourteenth. In the second category, the legal rights of the defendants have not been finally adjudicated; their day in court includes the right to appeal, and, under our decisions, their failure to claim a right not existing before the appeal does not deprive them of the right to claim it on the appeal when the right was brought into being by an intervening change of law.

The State contends that it was *Torcaso* which brought about the change in law; that, after *Torcaso,* defendants in the position of the appellants should have made their objection to the method of selection of the grand jury which indicted them in due time in the lower court; that their knowledge of the effect of *Torcaso* should be assumed; and that, therefore, they know-

ingly waived the defect in the selection of the grand jury. *Murray v. Burns,* 405 P. 2d 309 (Haw. 1965) (cited in *Schowgurow*), it is argued, held that the court was "obliged to assume" that in Maryland after *Torcaso,* in the selection of individuals making up the grand jury, there could not have been any "mandatory" exclusion of persons because they did not believe in the existence of God. However, in *Schowgurow,* we said:

> "Absent an adjudication by this Court or the Supreme Court of the United States that this practice is unconstitutional, the judges, clerks and other court officials who so made belief in God a requisite to jury service were properly performing their duties under our Constitution and the decisions of this Court." 213 A. 2d at 479.

To hold that the appellants waived their right to object, under Rule 885, because they did not raise a point then contrary to the Maryland law before a judge who was properly performing his judicial duty, before *Schowgurow,* in adhering to the provision of the Maryland Declaration of Rights, would be to say that the appellants effectively waived a right which we have held did not then exist. On the question of waiver, this case is the converse of *Smith,* where, after *Schowgurow,* there was a knowing, voluntary and express waiver of a right then existing.

The State contends, further, that Rule 12 (b) (2), of the Federal Rules of Criminal Procedure is substantially the same as Maryland Rule 885, and that, under the Federal Rule, failure of defendants to raise objection to the indictments by motions before trial have been held to constitute effective waivers. The State cites cases such as *Scales v. United States,* 260 F. 2d 21 (4th Cir. 1958) *aff'd,* 367 U. S. 203 (1961); *Poliafico v. United States,* 237 F. 2d 97 (6th Cir. 1956) *cert. denied* 352 U.S. 1025 (1957); and *United States v. Solomon,* 216 F. Supp. 835 (S. D. N. Y. 1963). In *Scales,* the defendant contended the indictment was invalid because the grand jury was illegally impaneled, in that the panel did not consist of persons whose names were publicly drawn from a box containing the

names of not less than three hundred qualified persons; it was held the defendants waived the point by failing to comply with the provisions of Rule 12. In *Poliafico,* the defendant challenged the array of the jury panel because of a "probability" of the exclusion of nationality and race groups; his objection was held to have been made too late. In *Solomon,* the defendant was held not to have made timely objection, under the Rule, to the information, which he contended was invalid because it, was signed by a United States Attorney who had been appointed under a statute which the defendant claimed to be unconstitutional. In none of these cases or in the other cases under the Federal Rule cited by the State, was the law changed, as here, after the trial but pending the appeal.

For the reasons set forth, we hold that, under the Maryland law, Rule 885 does not bar the appellants from invoking the principle set forth in *Schowgurow,* which, by reason of decisions of the Supreme Court of the United States, effected a change in the Maryland law after the appellants' convictions but before final judgment. Because of this holding, we do not reach the other constitutional questions which the appellants raise.

We are aware of the additional burden cast upon our courts and the State because of this decision. We repeat what was said in *Madison, supra;* the burden results because "under the decision of the Supreme Court in *Torcaso,* the fundamental principles of due process and the equal protection of the laws require that all accused persons in pending criminal cases shall have the right to ask that they be indicted and tried by juries selected in the manner which the Supreme Court's decision has made necessary. We pay a price for the federal nature of our government, but, without it, we would not be a nation."

*Judgments reversed and case re-manded for further proceedings.*