4 A.3d 53

**Shelton McCAIN**

v.

**STATE of Maryland.**

**No. 1465, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Sept. 3, 2010.

254

256

Mark Colvin (Elizabeth L. Julian, Acting Public Defender, on the brief) Baltimore, MD, for appellant.

Ryan R. Dietrich (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: HOLLANDER, WOODWARD, and KEHOE, JJ.

KEHOE, J.

Relying on vehicle registration information received from a mobile computer, Baltimore City police officers stopped an automobile driven by appellant, Shelton McCain. Mr. McCain and the passenger in the vehicle, Mr. McCain's wife, Tara McCain, were both arrested for violating provisions of Maryland's motor vehicle law. The police conducted a warrantless search of the vehicle and found a handgun. Mr. McCain then made an inculpatory statement. It transpired that the vehicle registration information may have been inaccurate and that the warrantless search of the vehicle may have been unreasonable under the Supreme Court's holding in *Arizona v. Gant*, 556 U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), which was decided after the search occurred.

Mr. McCain appeals his conviction by the Circuit Court for Baltimore City of possession of a regulated firearm by a person convicted of a disqualifying crime in violation of MD. CODE (2003), PUB. SAFETY § 5–133. He raises two questions, which we have rephrased:

I. Did the suppression court err in denying appellant's motion to suppress without making a factual finding as to whether the vehicle registration information the officers received from a mobile workstation and used to support the traffic stop was correct?

II. Should the case be remanded to the circuit court for further proceedings in light of *Arizona v. Gant*, 556 U.S. ——, 129 S.Ct. 1710 [173 L.Ed.2d 485] (2009)?

As to the first question, we conclude that the suppression court did not err because, under the facts of this case, the police officers were justified in relying on the registration

information even if it ultimately would have been proven to have been inaccurate. As to the second, we conclude that the police officers had every reason to believe that their search, when it was conducted, was reasonable. As there was no police misconduct, application of the exclusionary rule would be inappropriate. Therefore, we answer both questions in the negative and affirm the circuit court's judgment.

## FACTS AND LEGAL PROCEEDINGS

### The Suppression Hearing

Appellant was charged with various firearms and traffic violations arising out of an incident occurring in Baltimore on October 11, 2007. Before his trial, he moved to suppress the evidence of a handgun and his statement to police that the handgun belonged to him.

The following facts were adduced at the suppression hearing.

At approximately 9:30 p.m. on the night in question, Baltimore City Police Detectives Justin Stinnett and Stephan Robinson and Baltimore City Police Officer Dornsife[1] were patrolling East 28th Street in Baltimore City using their mobile workstation, an onboard computer that allowed them to access, among other databases, Motor Vehicle Administration vehicle registration information. While the officers were "running random tags" through the workstation, the license tag on a Chevrolet Cavalier came back as unregistered, or vehicle tag record not found.[2] The officers then stopped the Cavalier.

Appellant, the driver, immediately pulled over. Stinnett approached the driver's side of the vehicle and asked appellant

---

1. Officer Dornsife's first name is not provided in the transcripts.

2. When the officers returned to the police station later that night, Detective Robinson re-ran the tag and, from his desktop computer, received the same information, i.e., vehicle tag record not found. He printed the screen showing this information. The print-out was introduced as an exhibit at the suppression hearing.

for his license and registration. Appellant stated that he did not have his license, but he provided Stinnett with his name and date of birth. Upon running the name and birth date through the mobile workstation, Stinnett discovered that appellant's Maryland driver's license had been suspended. Stinnett then asked appellant to exit the vehicle, and arrested him for driving on a suspended license. Appellant was patted down for contraband; none was discovered.

After the pat-down, appellant was seated on the curb while Robinson and Dornsife spoke with the passenger, appellant's wife, Tara McCain. She gave the officers a rental agreement for the vehicle listing her as the only authorized driver. The officers then arrested Ms. McCain for permitting an unauthorized person to drive a rental vehicle, in violation of MD. CODE (1977, 2009 Repl.Vol.), TRANSP. ("TA") § 18–106(a). The vehicle was then searched.[3] The search uncovered a purse in the passenger compartment with a handgun inside. When the handgun was discovered, appellant, without prompting by the police officers, immediately took responsibility for it, stating that he had placed it in his wife's purse without her knowledge.

At the suppression hearing, appellant and his spouse introduced into evidence a document from the MVA dated May 8, 2008, indicating that the registration for the rented Cavalier expired in February 2008 and that the registration was cancelled on December 12, 2007, two months after the traffic stop. It was thus possible, appellant argued, that the MVA information obtained through the officers' mobile workstation was incorrect when it indicated the tag was not registered to a vehicle on October 11, 2007.

Stinnett acknowledged the MVA's registration information was sometimes inaccurate. He estimated that such inaccura-

---

**3.** Stinnett testified that the search was an inventory search; Robinson testified that the search of the vehicle was conducted pursuant to appellant's arrest. The suppression court found that the search was made incident to an arrest and did not constitute an inventory search. The State does not contest this conclusion on appeal.

cies occur perhaps once a month. Robinson also testified that such errors were uncommon, as he had not experienced that type of MVA error many times in the thousands of tags he had run through the mobile workstation. Robinson also stated that the MVA document indicating that the registration was cancelled on December 12, 2007, two months after the traffic stop, did not demonstrate that the vehicle was registered on October 11th. He posited that, within the two month period between October and December 2007, "anything coulda been done to renew the registration, get, fix the registration . . . on the vehicle."

Appellant testified that, upon being stopped on the night in question, Stinnett pulled him out of the car before running his name and date of birth and that when removed from the car, he had not been informed why he had been stopped. While appellant admitted claiming ownership of the handgun, he said that he did so in an effort to protect his wife. He stated that he had not seen the handgun before that night and did not know it was in her purse. He further admitted to not having a valid driver's license on the night in question and to having previous convictions for second degree assault, robbery, third degree burglary, and a handgun violation.

At the close of the testimony, the State argued that the traffic stop was valid because it was based on information derived from the MVA database, which the officers, in good faith, believed to be correct. Because the traffic stop was proper, the information learned by the police from their questioning of appellant and Ms. McCain supported their arrest. Since the arrest was valid, so too was the subsequent search of the vehicle for valuables, including Ms. McCain's purse, which turned up the handgun.[4]

The defense countered that the warrantless arrest was without probable cause because it was based on incorrect information and there was no applicable good faith exception

---

4. As noted in footnote 3, the suppression court was not persuaded by the State's inventory search argument.

to the exclusionary rule. Therefore, the handgun and the statement to police should be suppressed as fruits of a poisonous tree.

The suppression court ruled as follows:

We have a contest of dueling MVA records where the State from that night shows no registration and the defense produces something subsequently to it that implies that perhaps registration was still current until December.

It really doesn't matter whether the information is correct or not, because as far as the Baltimore City Police Department is concerned, and as much control as they have over acting upon the information, they subjectively rely in good faith on the information and objectively are not charged with imputed ignorance because it's not their act that acknowledges that the information is no longer operative and it's not their duty to take the information out of the computer.

Therefore, the initial stop was based on information that the officers had a right to rely on in the same way that in Michigan v. Defilipo [5] when the officers stop an individual for a statute that was in effect at the time, but was subsequently declared to be unconstitutional. It doesn't matter if it turns out that the statute's unconstitutional, just as it doesn't matter if it turns out that the MVA made a mistake.

There's nothing in this record that indicates that these officers knew that there were frequent occurrences of MVA mistakes, that they knew that the MVA wasn't a hundred percent perfect, but they were reliable, and that most of the time when they act upon the information it's correct to require them to inquire in the middle of the night when there's probably nobody to talk to at MVA to double-check

---

**5.** *See Michigan v. DeFillippo*, 443 U.S. 31, 37–38, 40, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) ("The subsequently determined invalidity of [an] ordinance on vagueness grounds does not undermine the validity of the arrest made for violation of that ordinance, and the evidence discovered in the search of [the defendant] should not have been suppressed.")

and verify it is an impossible task to ask a police department to shoulder.

\* \* \*

So I find the initial stop that allows the police to talk to these individuals to be stamped with reasonable suspicion.... I find that it ripened into probable cause to arrest the male Defendant when it turned out that he was driving on a suspended license, and that when the rental agreement showed that she was the only person who was authorized under the contract to drive and she allowed her husband to drive, and the officers had both the probable cause under that statute to arrest....

\* \* \*

The officers talk about an inventory search because internally that's what they call it. But the Baltimore City Police Department is totally incapable of using the inventory search exception to the warrant requirement because they don't ... conduct inventories the way courts have indicated.... But that pocketbook was within her Shimmel [6] [sic] perimeter and the gun was taken incident to the arrest. Therefore, the motion to suppress the gun [and the statement] is denied.

## The Trial

Appellant and Ms. McCain were tried together on August 4, 2008. The parties presented a "miscellaneous agreement" meant to result in an abbreviated court trial on the charges against them. Appellant and Ms. McCain waived their right

---

**6.** *See Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), in which the Supreme Court concluded that the warrantless search of the defendant's entire house, conducted incident to his arrest, was unreasonable because it went far beyond his person and the area from which he might have obtained either a weapon or something that could have been used as evidence against him. *Id.* at 768, 89 S.Ct. 2034. While the search of the entire house was found unreasonable, the Court held that a search of an arrestee's person and the area "within his immediate control" was reasonable. *Id.* at 763, 89 S.Ct. 2034.

to confront witnesses and incorporated by reference the testimony put forth at the suppression hearing. The prosecutor represented to the court that the handgun recovered from the vehicle had been tested and found to be an operable "high-power nine millimeter luger handgun." In addition, the prosecutor proffered that appellant had been convicted of assault in the second degree in 1999. Neither proffer was contested by appellant. The defendants moved for a judgment of acquittal based on their suppression motion, which the court denied. The trial judge found appellant guilty of possession of a regulated firearm by a person convicted of a disqualifying crime in violation of Public Safety Article § 5–133.[7] Appellant was sentenced to five years in prison without the possibility of parole.

## DISCUSSION

The Fourth Amendment prohibits unreasonable governmental searches and seizures. Subject to a few exceptions, warrantless searches, seizures, and arrests are unreasonable and violate the Fourth Amendment. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A valid traffic stop involving a motorist and/or passengers is one such exception. *Smith v. State,* 182 Md.App. 444, 462, 957 A.2d 1139 (2008) (citing *Terry v. Ohio,* 392 U.S. 1, 30–31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

A traffic stop is valid under the Fourth Amendment if the officer has probable cause to believe that the driver has committed a traffic violation or if the officer has a reasonable, articulable suspicion that either criminal or motor vehicle laws are being violated. *Smith,* 182 Md.App. at 462, 957 A.2d 1139 (citing *Lewis v. State,* 398 Md. 349, 362, 920 A.2d 1080 (2007)).[8]

---

**7.** The trial court also found Ms. McCain guilty of wearing, carrying, and transporting a handgun, in violation of MD.CODE (2002), CRIM. LAW § 4–203. Ms. McCain's sentence was deferred in favor of one year of supervised probation. She is not a party to this appeal.

**8.** "Reasonable, articulable suspicion" has been defined as " 'a particularized and objective basis for suspecting the particular person stopped

Without at least a reasonable, articulable suspicion on the officer's part, however, the stop is illegal and any arrest arising from it is unlawful. A search incident to an illegal arrest is also illegal. Evidence resulting from an illegal stop or search is subject to exclusion from evidence at trial. *See, e.g., United States v. Calandra,* 414 U.S. 338, 354, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Mapp v. Ohio,* 367 U.S. 643, 654–55, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Belote v. State,* 411 Md. 104, 112, 981 A.2d 1247 (2009).

There are exceptions to the exclusionary rule. In *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that the exclusionary rule did not apply when police officers, acting in good faith, executed a legally defective search warrant. 468 U.S. at 913, 104 S.Ct. 3405. The Court based its holding on three factors: first, the purpose of the exclusionary rule is to deter police misconduct. *Id.* at 916, 104 S.Ct. 3405. Second, there was no basis to conclude that "judges and magistrates are inclined to ignore or subvert the Fourth Amendment." *Id.* Finally, and in its eyes most important, the Supreme Court noted that "[j]udges and magistrates are not adjuncts to the law enforcement team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions. The threat of exclusion thus cannot be expected significantly to deter them." *Id.*

*Leon* involved police officers' good faith reliance upon a search warrant issued by a judicial officer. Since *Leon,* the Supreme Court has extended the good faith exception in different contexts. *DeFillippo,* 443 U.S. at 40, 99 S.Ct. 2627 (ordinance subsequently held to be unconstitutional); *Illinois v. Krull,* 480 U.S. 340, 346, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (statute later found to be unconstitutional); and *Arizona v. Evans,* 514 U.S. 1, 16, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (error in court records). The most recent instance is

of criminal activity[.]' " *In re Lorenzo C.,* 187 Md.App. 411, 427, 978 A.2d 890 (2009) (quoting *Stokes v. State,* 362 Md. 407, 415, 765 A.2d 612 (2001)).

*Herring v. United States,* 555 U.S. ——, 129 S.Ct. 695, 700, 172 L.Ed.2d 496 (2009) (error in police records). We will discuss *Evans* and *Herring* in greater detail later in this opinion.

■ Finally, because the exclusionary rule is intended to deter future misconduct by police officers, courts weighing the application of the good faith exception focus primarily not upon the mental state of the officers actually involved but rather on knowledge that can be imputed to a "reasonably well-trained officer." As the Supreme Court explained in *Herring:*

> The pertinent analysis of deterrence and culpability is objective, not an inquiry into the subjective awareness of arresting officers. . . . We have already held that "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances."

129 S.Ct. at 703 (quoting *Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. 3405) (some internal quotation marks and citations deleted).

■ However, courts will consider evidence pertaining to an officer's personal knowledge when that knowledge raises questions as to the officer's good faith. For example, in cases involving officers' good faith reliance on a defective search warrant, a court can consider whether the officers executing the warrant were aware that the application for the warrant had been rejected by previous judges before being approved. *See Agurs v. State,* 415 Md. 62, 74 n. 8, 998 A.2d 868 (2010), (citing *Leon,* 468 U.S. at 922–23 n. 23, 104 S.Ct. 3405; and *United States v. Carpenter,* 360 F.3d 591, 599 (6th Cir.2004) (Gilman, J., concurring)).

The good faith exception is firmly ensconced in Maryland's search and seizure law, at least with regard to good faith reliance upon search warrants. *See Agurs,* 415 Md. at 79–83, 998 A.2d 868 (surveying cases).

## I. The Stop

■ Appellant first contends that the trial court erred in denying his motion to suppress without making a factual finding as to whether the information the officers relied upon in stopping appellant's vehicle was correct. He reasons that, if the information was incorrect, the initial stop, the arrest, and the subsequent search of the vehicle violated the Fourth Amendment. He requests a remand to the circuit court for a finding as to whether the stop was based on incorrect information because, in his view, if it was, exclusion of the evidence would be the proper sanction.

The State disagrees, contending that, even if the information the officers relied on to support the traffic stop was incorrect, they acted in good faith upon information they reasonably believed to be accurate. Therefore the traffic stop was valid, and any evidence discovered as a result therefrom would be admissible.

■ When reviewing the denial of a motion to suppress, this Court looks solely at the record of the suppression hearing, extending great deference to the factual findings of the suppression judge with respect to determinations regarding witness credibility. *Prioleau v. State,* 411 Md. 629, 638, 984 A.2d 851 (2009); *Cooper v. State,* 163 Md.App. 70, 84, 877 A.2d 1095 (2005). Such determinations will not be disturbed unless clearly erroneous. *Prioleau,* 411 Md. at 638, 984 A.2d 851 (citing *State v. Tolbert,* 381 Md. 539, 548, 850 A.2d 1192 (2004)). All facts must be viewed in the light most favorable to the prevailing party on the motion. *Prioleau,* 411 Md. at 638, 984 A.2d 851 (citing *Tolbert,* 381 Md. at 548, 850 A.2d 1192 and *Rucker,* 374 Md. at 207, 821 A.2d 439).

■ Although we afford great deference to the suppression court in relation to its factual findings, we " 'undertake our own independent constitutional appraisal of the record by reviewing the law and applying it to the facts of the present case.' " *Prioleau,* 411 Md. at 638, 984 A.2d 851 (quoting *Tolbert,* 381 Md. at 548, 850 A.2d 1192).

■■■ The issue before us is whether the police officers who stopped appellant had a legally sufficient basis to suspect that he was violating the law. If they did, the traffic stop was lawful, and when the officers thereafter discovered that appellant was driving on a suspended license, their reasonable, articulable suspicion ripened to probable cause to arrest him.[9]

Appellant does not contend that the car he was driving when stopped was, without a doubt, legally registered on October 11, 2007. Instead, he asserts that the true-test MVA document introduced at the suppression hearing indicated that the vehicle was legally registered and that the suppression hearing judge erred in upholding the validity of the initial traffic stop without specifically determining whether the MVA information relied upon by the officers, i.e., that the vehicle was unregistered, was correct at the time of the stop. Implicit in the argument is the assumption that, if the vehicle had in fact been properly registered, the police officers acted unreasonably in making the traffic stop.

Appellant's argument is based upon *Ott v. State*, 325 Md. 206, 223, 600 A.2d 111 (1992). In that case, the Court of Appeals held that the good faith exception does not apply when the evidence in question resulted from an arrest made by a police officer in good faith reliance upon incorrect information in his department's records. Writing for the Court, Judge (now Chief Judge) Bell explained:

In the case *sub judice*, whether probable cause existed depended upon the accuracy of the outstanding warrant information in the Sheriff Department's computer. Placing accurate and current information into the computer, just as

---

9. TA § 13–401 provides that a vehicle may not be operated on a highway of this State if it is unregistered, has unpaid registration fees, or has a canceled, suspended, or revoked registration. In addition, TA § 13–702(a) prohibits a person from driving a vehicle required to be registered if the registration of the vehicle has been canceled, suspended, or revoked. Violations of both statutes are misdemeanors. TA § 27–101(a). Any police officer is authorized to stop a vehicle upon the commission of a misdemeanor in his presence. *Thanner v. State*, 93 Md.App. 134, 141, 611 A.2d 1030 (1992).

taking inaccurate or outdated information out, is a function performed by personnel in the Sheriff's Department. Allowing outdated, inaccurate information to remain in the computer, thus, placing citizens at risk of being deprived of liberty, without legal basis, . . ., therefore, is the fault of the Sheriff's Department.

*The arresting officer had no actual knowledge that the warrant on which he arrested petitioner was no longer outstanding. In that sense, then, he acted in subjective good faith. Nevertheless, he was chargeable with knowledge of the warrant's invalidity.* Since an officer in the Sheriff's Department had previously served the warrant, that department must have known that it was outdated.

*Id.* at 219, 600 A.2d 111 (citation omitted) (emphasis added).

The Court further stated that there was a "significant" distinction between cases such as the one before it and those cases in which "the information in the police department's possession was erroneous, [and] that fact was known, not to a police officer, but, rather to a third party who did not inform the police that the information was erroneous. . . ." *Id.* at 222 n. 3, 600 A.2d 111.

Since *Ott,* the Supreme Court decided *Evans* and *Herring.* Like *Ott, Evans* and *Herring* involved warrantless arrests and subsequent searches based upon erroneous records. Each case reflects upon a different aspect of the arguments presented by appellant.

The issue in *Evans* was whether the good faith exception should apply when the arrest in question was made by a police officer in reliance on a court record that later turned out to be erroneous. The Supreme Court held that the exception applied, thus permitting admission of evidence stemming from the arrest. Writing for the Court, Chief Justice Rehnquist stated:

[T]here is no basis for believing that application of the exclusionary rule in these circumstances will have a significant effect on court employees responsible for informing the police that a warrant has been quashed. *Because court*

*clerks are not adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime, ... they have no stake in the outcome of particular criminal prosecutions....* The threat of exclusion of evidence could not be expected to deter such individuals from failing to inform police officials that a warrant had been quashed....

514 U.S. at 14–15, 115 S.Ct. 1185 (emphasis added and internal citations omitted).

*Evans* specifically did not address "whether the evidence should be suppressed if police personnel were responsible for the error." *Id.* at 16 n. 5, 115 S.Ct. 1185. The Supreme Court addressed that issue in Herring.

In *Herring*, a police officer arrested the defendant based upon outdated information from a neighboring jurisdiction regarding an outstanding warrant. 129 S.Ct. at 698. A search pursuant to the arrest uncovered a handgun and illicit drugs. *Id.* In considering Herring's appeal, the Court of Appeals for the Eleventh Circuit found that the arresting officer was acting in good faith and that the incorrect information from the neighboring county was the result of negligence. It concluded that the good faith exception should apply. *United States v. Herring*, 492 F.3d 1212, 1219 (11th Cir.2007). Noting that other "courts have required exclusion of evidence obtained through similar police errors," the Supreme Court grant certiorari "to resolve the conflict." 129 S.Ct. at 699.

Writing for the Court, Chief Justice Roberts began his analysis by noting that a violation of the Fourth Amendment "does not necessarily mean that the exclusionary rule applies." *Id.* at 700. Instead, the exclusionary rule is " 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.' " *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)). In reviewing the development of the good faith exception to the exclusionary rule, the Court identified certain underlying principles. First, the exclusionary rule is not an individual right but rather a means by which courts attempt to deter law

enforcement misconduct. *Id.* Second, in applying the exclusionary rule, courts must weigh the deterrent effect against the substantial social consequences incurred by "letting guilty and possibly dangerous defendants go free—something that 'offends basic concepts of the criminal justice system.'" *Id.* at 701, (quoting *Leon,* 468 U.S. at 908, 104 S.Ct. 3405). The Chief Justice concluded his survey with the following observation:

> The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct. As we said in *Leon,* "an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus" of applying the exclusionary rule. 468 U.S., at 911 [104 S.Ct. 3405]. . . .

129 S.Ct. at 701.

Turning to the case before it, the Supreme Court concluded that mere negligence in record-keeping by law enforcement agencies did not justify application of the exclusionary rule. Chief Justice Roberts explained:

> We do not suggest that all recordkeeping errors by the police are immune from the exclusionary rule. In this case, however, the conduct at issue was not so objectively culpable as to require exclusion. . . .

> If the police have been shown to be reckless in maintaining a warrant system, or to have knowingly made false entries to lay the groundwork for future false arrests, exclusion would certainly be justified under our cases should such misconduct cause a Fourth Amendment violation.

> * * *

> Petitioner's claim that police negligence automatically triggers suppression cannot be squared with the principles underlying the exclusionary rule as they have been explained in our cases. In light of our repeated holdings that the deterrent effect of suppression must be substantial and outweigh any harm to the justice system, *e.g.*, *Leon,* 468 U.S., at 909–910 [104 S.Ct. 3405], we conclude that when police mistakes are the result of negligence such as that

described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not "pay its way." *Id.*, at 907–908, n. 6 [104 S.Ct. 3405] (internal quotation marks omitted). 129 S.Ct. at 703–04.

In *Ott*, the Court of Appeals held that the good faith exception did not apply to an arrest made pursuant to an error in the police department's records because knowledge of the error must be imputed to the arresting officer. 325 Md. at 220, 600 A.2d 111. The Court of Appeals drew a distinction between a police officer's reliance upon his or her department's records and an officer's reliance on records maintained by a third party, without deciding whether the good faith exception would be applicable in the latter situation. *Id.* at 222 n. 3, 600 A.2d 111. The Supreme Court in *Evans* held that the good faith exception could apply in the context of reliance upon court records because courts "have no stake in the outcome of particular criminal prosecutions...." 514 U.S. at 14–15, 115 S.Ct. 1185.

We hold that the same reasoning should apply to the MVA's license and registration records in this case. The Baltimore City Police Department has no control over those records and the MVA has no interest, that we can conceive, in maintaining inaccurate or outdated records. Our conclusion is consistent with those of other courts. *See, e.g., United States v. Miguel,* 368 F.3d 1150, 1154 (9th Cir.2004); *State v. Muller,* 698 N.W.2d 285, 292 (S.D.2005); *State v. Lanoue,* 156 Vt. 35, 587 A.2d 405, 406 (1991).

 There is another step in the analysis. The arresting officers' reliance upon the information must also be reasonable. *Herring* informs us that reliance is reasonable even if there are occasional mistakes, arising from negligence, but unreasonable if mistakes are frequent enough to indicate gross negligence or "systemic error or reckless disregard of constitutional requirements."

Appellant contends that "the record ... demonstrates that errors in the mobile workstation computer database occur

often enough to render the information in the database unreliable. Reliance by police officers on such a recordkeeping system is unreasonable." Based upon our independent review of the evidence at the suppression hearing, we reach the opposite conclusion.

The suppression court found that "[t]here's nothing in this record that indicates that these officers knew that there were frequent occurrences of MVA mistakes...." We agree. Detectives Stinnett and Robinson testified that, between them, they had used the MVA database thousands of times. Stinnett testified that he encountered inaccurate information "[m]aybe once out of the month, maybe. It's not that often." Robinson testified that, although he could not give an estimate, "I haven't experienced it many times myself ...." An occasional discrepancy is far removed from the "reckless, or grossly negligent conduct or ... recurring or systemic negligence" necessary to trigger imposition of the exclusionary rule. *Herring*, 129 S.Ct. at 704.

We conclude that the officers' reliance on the MVA records was reasonable and that reliance was sufficient, without regard to the records' ultimate accuracy, to insulate the evidence of the handgun and appellant's inculpatory statement from the operation of the exclusionary rule. For that reason, it is unnecessary to remand to the circuit court for a determination whether the vehicle rented by Ms. McCain was registered on the night in question.

## II. Remand in light of *Arizona v. Gant*

As his second argument, appellant urges that we should remand this matter to the circuit court for further proceedings in light of the Supreme Court's recent decision in *Arizona v. Gant*, 556 U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), which held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 1723.

The State counters that appellant has not preserved this issue for appellate review by failing to raise the matter of the validity of the search of the vehicle below. Even if the issue has been preserved, the State continues, appellant has no standing to object to the search of the purse because it belonged not to him, but to his wife, and he had no legitimate expectation of privacy in the purse that was subject to the search. Finally, the State contends that a remand is unnecessary because the record establishes that the police relied in good faith on the law existing at the time in searching the vehicle. Therefore, even if the search is determined to be in violation of the principles enunciated in *Gant,* the exclusionary rule should not apply. Before turning to the parties' contentions, we consider *Gant* itself, a process that requires us to begin with *New York v. Belton,* 453 U.S. 454, 458–60, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

*Belton,* like *Gant* and the case before us, involved a warrantless search of a vehicle after a traffic stop. As he approached the vehicle, the officer smelled burnt marijuana. He directed the occupants to exit the vehicle, placed them under arrest, and proceeded to search the vehicle, finding cocaine in a pocket of Belton's jacket, which was located in the passenger compartment. *Id.* at 455–56, 101 S.Ct. 2860. Before the Supreme Court, Belton argued that the search of the jacket was unreasonable as he no longer had access to it. *Id.* at 456, 101 S.Ct. 2860. The Court rejected the contention. The Court first noted that lower courts, both state and federal, had resolved the issues raised by the case in different ways. *Id.* at 459–60, 101 S.Ct. 2860. The Court continued:

> In short, "[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." *Dunaway v. New York,* 442 U.S. 200, 213–214 [99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) ].

\* \* \*

When a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority.... In order to establish the workable rule this category of cases requires, we read *Chimel's* definition of the limits of the area that may be searched in light of that generalization. *Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile,*[ ] *he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.*[ ]

453 U.S. at 459–60, 101 S.Ct. 2860 (emphasis added; footnotes omitted).

Prior to the Supreme Court's April 21, 2009 decision in *Gant, Belton* was widely understood to stand for the proposition that the Fourth Amendment did not prohibit a police officer's search of the passenger compartment of a vehicle "incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant,* 129 S.Ct. at 1718.

In *Gant,* the Supreme Court noted that, despite the prevalence of what it termed the "broad reading" of *Belton,* a minority of jurisdictions read the decision more narrowly. 129 S.Ct. at 1718–19. Under this view, *Belton* "merely delineat[ed] 'the proper scope of a search of the interior of an automobile' incident to an arrest." 129 S.Ct. at 1717 (quoting *Belton,* 453 U.S. at 459, 101 S.Ct. 2860.) In *Gant,* the Supreme Court rejected the broad reading of *Belton* and held instead that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of the arrest." *Id.* at 1723. The Court further explained that when these justifications are absent, "a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Id.* at 1723–24.

Maryland unquestionably had adopted the broad reading of *Belton. See, e.g., Gee v. State,* 291 Md. 663, 668, 435 A.2d 1387 (1981) (*"Belton* is dispositive" as to admissibility of evidence found in the search of the passenger compartment of a vehicle contemporaneous with the driver's arrest); *Hamel v. State,* 179 Md.App. 1, 18, 943 A.2d 686 (2008) ("The search comports with *Belton* and *Thornton* [*v. United States,* 541 U.S. 615, 617, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) ]. The fact that Hamel was secured and without access to his vehicle did not cause the search of the locked glove compartment to exceed the permissible scope of the search incident to his arrest."); *Purnell v. State,* 171 Md.App. 582, 602, 911 A.2d 867 (2006), *cert. denied,* 398 Md. 315, 920 A.2d 1060 (2007) ("It is the whole of the passenger compartment that is subject to search, including any items or containers and the contents thereof, belonging to the driver or an occupant regardless of whether he or she has been placed under arrest or is within or has been ordered out of the vehicle."); *State v. Fernon,* 133 Md.App. 41, 64, 754 A.2d 463 (2000) ("If a contemporaneous vehicle search is constitutional in the absence of security measures, it ought to be lawful when reasonable security measures are promptly utilized before the search is executed. Indeed, the use of safety procedures should be encouraged.")

 *Gant* was decided after the appellant's arrest and trial and while his case was pending on direct appeal. *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), teaches that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith* identified three reasons for applying new law to cases pending on direct appeal. First, to fail to do so would be to convert the Supreme Court into "in effect, a legislative body announcing new rules but not applying them." . . . 322–23. Second, all courts should resolve cases " 'in light of [the court's] best understanding of governing constitutional principles.' " *Id.* at 323, 107 S.Ct. 708, (quoting, *Mackey v. United States,* 401 U.S. 667, 679, 91 S.Ct. 1160, 28

L.Ed.2d 404 (1971) (Harlan, J., concurring)). Finally, failure to apply new holdings to pending cases would result in the dissimilar treatment of similarly situated defendants. *Id.* As *Gant* modifies the law of warrantless searches of automobiles, it applies to appellant's case. Therefore, we conclude that the search violated the Fourth Amendment.

▮▮▮▮▮ This conclusion does not end our analysis. A violation of the Fourth Amendment's prohibition against unreasonable searches and seizures does not ineluctably result in exclusion of the evidence stemming from the search. Instead, a court weighing a motion to exclude such evidence must also consider the "culpability of the law enforcement conduct$_{[}$ $_]$ [a]s ... 'an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus' of applying the exclusionary rule." *Herring*, 129 S.Ct. at 701 (quoting *Leon*, 468 U.S. at 911, 104 S.Ct. 3405). As the Court of Appeals for the Tenth Circuit observed in *United States v. McCane*, 573 F.3d 1037, 1045 n. 5 (10th Cir.2009), *cert. denied*, —— U.S. ——, 130 S.Ct. 1686, 176 L.Ed.2d 179 (2010), "[t]he issue before us, however, is not whether the Court's ruling in *Gant* applies to this case, it is instead a question of the proper remedy upon application of *Gant*."

We now turn to the parties' specific contentions.

### (A) Preservation

▮▮▮ We agree with the State that appellant failed to preserve this issue for appellate review by not raising the validity of the search below. Pursuant to Md. Rule 8–131(a), an appellate court ordinarily "will not decide any ... issue unless it plainly appears by the record to have been raised in or decided by the trial court...." Under the Rule, Maryland courts have held that a defendant in a criminal prosecution may not raise for the first time on appeal an objection that was available to him at trial but that he failed to raise below. *Hays v. State*, 240 Md. 482, 485, 214 A.2d 573 (1965).

▮▮▮ Maryland courts, however, have held that appellate courts may exercise plain error review when there is a failure

to raise an issue at trial that becomes relevant when there is a relevant post-trial Supreme Court or Court of Appeals ruling changing the legal standard concerning the issue. *Hays* itself so holds. *Id.* (to fail to exercise plain error review would offend the "fundaments of fairness.") *See also Franklin v. State,* 319 Md. 116, 126, 571 A.2d 1208 (1990) and *Squire v. State,* 280 Md. 132, 136, 368 A.2d 1019 (1977). We invoke our discretion to decide how *Gant* should apply to appellant's case.

### *(B) Standing*

■ Prior to *Gant,* under the "broad" interpretation of *Belton* followed by this State, a law enforcement officer could, incident to the lawful arrest of an occupant of a motor vehicle, search not only the passenger compartment of the vehicle but also any containers located therein. *Gant,* 129 S.Ct. at 1717; *Belton,* 453 U.S. at 460, 101 S.Ct. 2860. Ms. McCain's purse was such a container. The State contends that the record does not demonstrate that appellant had a legitimate expectation of privacy in the purse. Therefore, appellant lacked standing to object to its search. We can dispose of this argument quickly.

■ Because the search at issue was without a warrant, the State had the burden of production and persuasion at the suppression hearing. *See, e.g., Epps v. State,* 193 Md.App. 687, 704–05, 1 A.3d 488 (2010). As appellant correctly notes in his reply brief, the State did not contend at the suppression hearing that appellant lacked a legitimate expectation of privacy in Ms. McCain's purse. As the issue was neither raised before, nor decided by, the circuit court, we can consider the State's contention only through the exercise of the discretion conferred upon us by Maryland Rule 8–131(a). *Epps,* 193 Md.App. at 707–11, 1 A.3d 488 (citing, among other cases, *Jones v. State,* 379 Md. 704, 713–14, 843 A.2d 778 (2004), and *State v. Bell,* 334 Md. 178, 187–88, 638 A.2d 107 (1994)).

■ We decline to do so in this case. Whether a party has a legitimate expectation of privacy in another's property de-

pends in part upon a consideration of the facts supporting the assertion of the expectation. *See Laney v. State,* 379 Md. 522, 545–46, 842 A.2d 773 (2004). Because the State did not raise the issue at the suppression hearing, there was no reason for appellant to present such evidence and he did not. Under these circumstances, consideration of the standing issue for the first time on appeal would be unfair to appellant. *Jones,* 379 Md. at 714, 843 A.2d 778 (the discretion to review an unpreserved issue "should not be exercised when it will work an unfair prejudice to the parties.")

### (C) The Good Faith Exception to the Exclusionary Rule

 *Gant* held that police cannot lawfully search a suspect's vehicle incident to a lawful arrest unless the arrestee is unsecured and within reaching distance of the passenger compartment of the vehicle at the time of the search or when it is reasonable to believe the vehicle contains evidence of the offense of the arrest.[10] *Gant,* 129 S.Ct. at 1719. There is no evidence in the record as to whether appellant and Ms. McCain were secured or unsecured or where they were when the vehicle was searched.

Appellant requests us to vacate his conviction and remand the case for a new trial whereupon appellant could file a motion to suppress based upon *Gant,* thus providing the parties an opportunity to address the factual issue. The State contends that we should not do so on the basis of the good faith exception to the exclusionary rule. For the purposes of our analysis, we will assume that both appellant and Ms. McCain (who were both under arrest at the time the vehicle was searched) had been removed from the vehicle, did not

---

10. The Supreme Court specifically noted that when the recent vehicle occupant is arrested for a traffic violation, there can be no reasonable basis to believe the vehicle contains relevant evidence of that violation. *Gant,* 129 S.Ct. at 1719. As appellant was arrested for a traffic violation, that justification for the search of the vehicle is absent, and the State makes no contradictory argument.

have ready access to it, and were otherwise secured. In other words, we will assume for purposes of analysis that the facts of this case are, on all relevant points, identical to those in *Hamel,* 179 Md.App. at 18, 943 A.2d 686, and *Fernon,* 133 Md.App. at 44–45, 754 A.2d 463.

*Gant* has generated a spate of trial court and appellate decisions as to whether the good faith exception to the exclusionary rule should be applied to cases such as appellant's. As there are no Maryland decisions on point, we look to cases from other jurisdictions. (All of these cases involve essentially the same fact pattern, namely a warrantless vehicle search attendant to an arrest occurring prior to the Supreme Court's opinion in *Gant* that would have been permitted under the broad reading of *Belton* but not so under *Gant;* thus, a description of the facts of each is unnecessary.)

The leading case for the proposition that the good faith exception should not apply is *United States v. Gonzalez,* 578 F.3d 1130 (9th Cir.2009). The case had been remanded to the Ninth Circuit by the Supreme Court "for further consideration in light of its recent decision in *Arizona v. Gant." Id.* The Court concluded that the good faith exception should not apply. It began its analysis by noting the Supreme Court had never applied the good faith exception to a search valid at the time it was made but declared unreasonable by a subsequent Supreme Court decision. *Id.* at 1132. The Ninth Circuit determined that application of the good faith exception would conflict with *Griffith* and other Supreme Court decisions concerning the applicability of new law announced by the Supreme Court on cases pending on direct review. *Id.*

The Ninth Circuit concluded that application of the good faith exception to Gonzalez would " 'violate[ ] the principle of treating similarly situated defendants the same' by allowing only one defendant to be the beneficiary of a newly announced rule." 578 F.3d. at 1132 (quoting *Griffith,* 479 U.S. at 323, 107 S.Ct. 708).

*United States v. Peoples,* 668 F.Supp.2d 1042, 1045–47 (W.D.Mich.2009); and *United States v. Buford,* 623 F.Supp.2d 923, 925–26 (M.D.Tn.2009), are similar in reasoning and result to *Gonzalez.*[11],[12]

The leading case in support of the proposition that the good faith exception should be applied in cases such as the one before us is *United States v. Davis,* 598 F.3d 1259, 1267 (11th Cir.2010). The *Davis* Court began its analysis by noting:

The [Supreme] Court's holdings are confined to the questions on which it grants certiorari, .... and in *Gant* neither the order granting certiorari nor the Court's subsequent opinion discusses the exclusionary rule at all. In other words, the Court did not express approval of the exclusionary rule's application below merely by affirming the state court's judgment. Before the Supreme Court, *Gant* con-

---

**11.** *State v. McCormick,* 152 Wash.App. 536, 542, 216 P.3d 475 (Division II, 2009), *review pending,* 2010 Wash. LEXIS 230 (2010), reached the same result as *Gonzalez.* However, a different division of the Washington Court of Appeals reached the opposite result. *See State v. Riley,* 154 Wash.App. 433, 442, 225 P.3d 462 (Division I, 2010). We view these cases as having limited persuasive value.

**12.** *United States v. Debruhl,* 993 A.2d 571, 584–89 (2010), reached the same result as *Gonzalez* and the cases cited in the previous paragraph, but through a different analysis. The *Debruhl* Court did not interpret *Gant* as addressing how its holding should be applied to pending cases. *Id.* at 575. The court stated that the good faith exception, however, should apply "only when a Supreme Court ruling upsets clearly settled law on which the officer had reasonably relied before the high Court's decision placed the mistake of law on the lower court, not on the officer." *Id.* at 578. It then reviewed prior decisions of the District of Columbia Court of Appeals and concluded that it was not clear that the "broad reading" of *Belton* was good law in the District when the search of Debruhl's vehicle took place. Therefore, it held that the good faith exception was inapplicable. *Id.* at 586–87.

Similarly, in *People v. Mungo,* —— Mich.App. ——, ——, —— N.W.2d ——, 2010 WL 1461620, 2010 Mich.App. LEXIS 610, 23–24 (Mich.Ct. App. Apr. 13, 2010), the court declined to apply the good faith exception to a pre-*Gant Belton* search because it concluded that no Michigan appellate court had considered a challenge to a vehicle search under a factual scenario similar to *Gant* and that the issue was not, as a matter of Michigan law, clearly settled.

cerned the meaning of *Belton,* not the scope of the exclusionary rule.

*Id.* at 1264.

The *Davis* Court reasoned that, as "the exclusionary rule is justified solely by its potential to deter police misconduct, suppressing evidence obtained from an unlawful search is inappropriate when the offending officer reasonably relied on well-settled precedent." *Id.* at 1266. It elaborated:

We see no meaningful distinction between a magistrate judge's error in applying Supreme Court precedent to a probable-cause determination and our error in applying that same precedent to the question of a warrantless search's constitutionality. The exclusionary rule must be "restricted to those situations in which its remedial purpose is effectively advanced," *Krull,* 480 U.S. at 347, 107 S.Ct. 1160, and suppressing evidence obtained in reliance on well-settled precedent would be no more effective in deterring police misconduct than would suppressing evidence obtained pursuant to a judge's probable-cause determination.

*Id.*

Finally, the *Davis* Court stressed

"our precedent on a given point must be unequivocal before we will suspend the exclusionary rule's operation. We have not forgotten the importance of the 'incentive to err on the side of constitutional behavior,' and we do not mean to encourage police to adopt a ' "let's-wait-until-it's-decided approach" ' to 'unsettled' questions of Fourth Amendment law."

*Id.* at 1267 (quoting *United States v. Johnson,* 457 U.S. 537, 561, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982)) (quoting in turn *Desist v. United States,* 394 U.S. 244, 277, 89 S.Ct. 1048, 22 L.Ed.2d 248 (1969) (Fortas, J., dissenting)).

Other courts have reached the same result on substantially the same reasoning. *See McCane,* 573 F.3d at 1044–45; *United States v. Albert,* 579 F.3d 1188, 1192 n. 5 (10th Cir.2009) (following *McCane* ); *United States v. McGhee,* 672 F.Supp.2d 804, 811–12 (S.D.Ohio 2009); *United States v. Wes-*

*ley,* 649 F.Supp.2d 1232, 1255 (D.Kan.2009); *United States v. Allison,* 637 F.Supp.2d 657, 672 (S.D.Iowa 2009); *United States v. Grote,* 629 F.Supp.2d 1201, 1206 (E.D.Wash.2009); *State v. Dearborn,* 786 N.W.2d 97, 107–08 (Wis.2010); and *State v. Baker,* 229 P.3d 650, 663–64 (Utah 2010); *Meister v. Indiana,* 912 N.E.2d 412, 418 n. 1 (Ind.Ct.App.2009) (dicta).

The starting point in our analysis is whether *Gant* itself addresses the good faith exception. We believe that the Court's analysis in *Davis* answers this question. For the reasons expounded in *Davis,* we conclude that the Supreme Court's holding in *Gant* is not as expansive as suggested in *Gonzalez* and some of the cases following that decision. We do not interpret *Gant* as addressing, either directly or by implication, whether the good faith exception should be applicable in cases where police officers conducted vehicle searches in reliance upon *Belton* prior to the date of *Gant.*

██ Fairness requires us to apply the Court's holding in *Gant* to appellant's case. Fairness does not require us to exclude the evidence of the search because Mr. McCain has no right to benefit from the exclusionary rule. "[T]he exclusionary rule is not an individual right and applies only where it ' "result[s] in appreciable deterrence." ' " *Herring,* 129 S.Ct. at 700 (quoting *Leon,* 468 U.S. at 909, 104 S.Ct. 3405 (quoting, in turn, *United States v. Janis,* 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976))). Instead, in light of the rule's " 'substantial social costs,' " *id.* (quoting *Krull,* 480 U.S. at 352–53, 107 S.Ct. 1160), courts "have focused on the efficacy of the rule in deterring Fourth Amendment violations in the future." *Herring,* 129 S.Ct. at 700. We agree that " '[p]enalizing the officer for the [court's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.' " *Davis,* 598 F.3d at 1266 (quoting *Leon,* 468 U.S. at 921, 104 S.Ct. 3405).

A second, and more difficult, issue is whether the good faith exception should be expanded beyond its scope as presently recognized by the Supreme Court to include good faith reliance upon appellate judicial decisions, instead of judicial deci-

sions as to whether search warrants should issue (*Leon*); court records (*Evans*); police records (*Herring*); and statutes or ordinances later found to be unconstitutional (*Krull* and *DeFillippo*). In light of the purpose of the exclusionary rule, we conclude that, at least in this instance, the good faith exception should be extended.

As we have explained, the prior decisions of our Court and the Court of Appeals adopting the "broad reading" of *Belton*, established "a bright-line judicial rule." In *Fernon*, we considered a factual scenario identical to the one we assume existed in this case and we stated, in clear and unmistakable terms, that, not only was the search constitutionally permissible, but that securing the driver prior to conducting the vehicle search "should be encouraged" as a common sense safety precaution. 133 Md.App. at 57–58, 754 A.2d 463. Our decision in *Hamel*, which was to the same effect, was filed on March 6, 2008, nearly six months after the search at issue in this case took place. The exclusionary rule is not an end in itself. Rather, it serves to deter misconduct by police officers.

We conclude that well-trained police officers in Maryland would have believed, in good faith, that they had the authority to search the passenger compartment of the vehicle after arresting appellant on October 11, 2007, because on that date the law of this State was clearly to that effect and had been so for many years. As the officers could not be charged with knowledge that the search violated the Fourth Amendment, there was no police misconduct. Application of the exclusionary rule in this case would not advance any of the policies it is intended to further. We hold that applying *Gant* to the issues raised in this appeal does not change the outcome—the evidence of the handgun and appellant's statement were properly admitted.

We emphasize the narrow scope of our ruling. We adopt the caveat expressed in both *Davis*, 598 F.3d at 1266 ("We stress, however, that our precedent on a given point must be unequivocal before we will suspend the exclusionary rule's operation . . . .") and *Debruhl*, 993 A.2d at 578 (the good faith

exception "applies only when a Supreme Court ruling upsets clearly settled law on which the officer had reasonably relied before the high Court's decision placed the mistake of law on the lower court, not on the officer.")

**THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**