32 A.3d 1090

George J. CARROLL

v.

STATE of Maryland.

No. 2583, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Dec. 5, 2011.

488

492

Brian Rabbit, Washington, DC (Williams & Connolly, LLP, Paul B. DeWolfe, Public Defender, Baltimore, MD, on the brief), for Appellant.

Jessica Hall (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: KRAUSER, C.J., GRAEFF and HOTTEN, JJ.

GRAEFF, J.

A jury sitting in the Circuit Court for Frederick County convicted George J. Carroll, appellant, of four counts of attempted armed robbery, four counts of conspiracy to commit armed robbery, four counts of second degree assault, four counts of reckless endangerment, and four counts of false imprisonment.[1] The court imposed concurrent sentences of 18 years on two of the convictions for attempted armed robbery and 20–year suspended sentences for the other two convictions for attempted armed robbery and for the conspiracy convictions.[2]

On appeal, appellant raises several issues for review, which we have rephrased as follows:

---

1. The jury acquitted appellant of armed robbery, the lesser-included offense of simple robbery, kidnapping, theft of less than $1,000, and four counts of wearing and carrying a dangerous weapon with intent to injure.

2. The court merged appellant's convictions for reckless endangerment, false imprisonment, and assault with the attempted armed robbery convictions. The court also sentenced appellant to five years probation upon release.

1. Did the trial court abuse its discretion in declining to instruct the jury that the State had the burden to prove each element of every charged offense beyond a reasonable doubt?

2. Was the evidence sufficient to support appellant's conviction for conspiracy to commit armed robbery?

3. Did the trial court commit plain error in admitting a recording of Mr. Carroll's interrogation by the police?

4. Did the trial court err in failing to merge: (1) Mr. Carroll's convictions for conspiracy to commit armed robbery with his convictions for attempted armed robbery; and (2) appellant's four convictions for conspiracy?

5. Should appellant's conviction on Count 24, second degree assault, be vacated?

For the reasons set forth below, we shall vacate the conviction on Count 24, vacate three of the four sentences for conspiracy, and otherwise affirm the judgments of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2010, four high school students, Andrew, Josh, Lauren, and Jessica, went to a campsite in Frederick, Maryland. When they arrived at the campsite, at approximately 11:00 p.m., it was raining. The girls stayed in the car, and Andrew and Josh started setting up the tent. While Andrew and Josh were setting up the tent, three men, appellant, Nicholas Cann, and Zachary Lee, entered their campsite. Andrew testified that he "thought there would be trouble" because the men were holding machetes and a baseball bat. The encounter remained friendly, however, and the men invited Andrew and Josh to their campsite to drink with them. Andrew and Josh appeared receptive to the offer because the men had machetes, and they did not want to make the men mad. Appellant, Mr. Cann, and Mr. Lee left, and Andrew and Josh finished setting up the tent. Lauren and Jessica then joined them in the tent.

Approximately fifteen to twenty minutes later, the three men returned to the teenagers' campsite. The men put more wood on the fire and began swinging the machetes against the sides of the tent. They told the teenagers to "[g]et the fuck out of the tent and give us everything you have." Andrew and Josh exited the tent. Jessica and Lauren stayed inside the tent, and Jessica dialed 911. When the boys exited the tent, appellant held a machete to the boys' ankles. The other two men were holding a baseball bat and a machete. Mr. Cann reached into the tent, held a machete to Jessica's throat, and pulled her out of the tent. Mr. Cann ordered Lauren out of the tent. Appellant told the teenagers to put their cell phones in a pile and to give them any money that they had. Andrew had $100 with him and $100 in the center console of his car. The men took Andrew's license, and they told the teenagers that, if they involved the police, the men would come find them and kill them.

Andrew testified that the men "got rowdy, and started yelling at each other and wanted more" money. Andrew wanted to "get back to civilization [and] out of the woods," so he suggested that they go to an ATM to get more money. The three men discussed the idea, and they ultimately agreed that Mr. Cann would go with all of the teenagers to the ATM.

Andrew then drove his car out of the woods, with Mr. Cann in the passenger seat and the three other teenagers in the back seat. Mr. Cann told them that he had a gun, and he kept his hand under his shirt on the waistband. As they were driving, police cars passed them. Andrew pulled the car to the side of the road and turned it off. As vehicles passed the car, Andrew flashed his high beams repeatedly. An officer approached the car, and Andrew mouthed the word "help." Andrew got out of the car and ran toward the officer shouting that Mr. Cann had a gun. The other teenagers got out of the car, and the police took Mr. Cann into custody.

As the police were speaking with the teenagers, appellant approached from the woods. The two females screamed, and the officers arrested appellant. Mr. Lee was subsequently

found kneeling next to a tree. Close to where Mr. Lee had been hiding, officers recovered a driver's license belonging to Andrew, a machete, a machete holder, a belt, a flashlight and an empty case that could hold a machete. A second machete was recovered at the teenagers' campsite, and a baseball bat was recovered from the men's campsite.

After appellant's arrest, he was interviewed by police. At trial, the State introduced into evidence a recording of the interview.

Appellant initially told police that he did not have any knowledge of what happened, and he denied going to any campsite other than his own. Eventually, after the police told him that the victims had described him, including a tattoo on his arm, he admitted that he did go to the teenagers' campsite. He maintained, however, that he did not do anything wrong. Appellant suggested that the other two men may have had a plan, stating that they were winking at each other and looking at each other "a little funny," in a way that his "gut [told him] was bad." He denied, however, that he was in on any plan.

Ultimately, appellant admitted that he was there when Mr. Cann dragged a "stick" along the side of the tent and that he discussed whether to go to the bank to get money. He said that he told the other men that it was not a good idea to get in the car and go to the bank. Appellant indicated, however, that Mr. Cann was "the mouth," the ringleader.

As indicated, the jury found appellant guilty of four counts of attempted armed robbery, four counts of conspiracy to commit armed robbery, four counts of second degree assault, four counts of reckless endangerment, and four counts of false imprisonment. This timely appeal followed.

## DISCUSSION

### I.

### Jury Instruction

Appellant's first contention involves the court's instructions regarding the State's burden to prove his guilt beyond a

reasonable doubt. He argues that the court erred "by refusing to instruct the jury that the State had the burden of proving each element of every charged offense beyond a reasonable doubt." The State asserts that the court's instructions were proper.

## A.

### Proceedings Below

The Maryland Criminal Pattern Jury Instruction ("MPJI–CR") 2:02, addressing the presumption of innocence and reasonable doubt, provides, in part, as follows:

> The defendant is presumed to be innocent of the charges. This presumption remains with the defendant throughout every stage of the trial and is not overcome unless you are convinced beyond a reasonable doubt that the defendant is guilty.
>
> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt. This burden remains on the State throughout the trial. The defendant is not required to prove [his] [her] innocence.

Appellant requested that the court modify the pattern instruction to add that the State had the burden to prove each element of a charge beyond a reasonable doubt. Additionally, he asked that the pattern instructions for each substantive offense be modified to add, after the listing of elements, the following: "In order for the person to be convicted, the State must prove beyond a reasonable doubt each of these [number of] elements."

The State objected to the modifications, arguing that "it's not in the Pattern anywhere and its sufficiently covered" by the instructions as a whole. The prosecutor asserted that it would be "an unfair focus to put on each of the charge[s], the beyond the reasonable doubt standard," and that if the court did so, then "to be fair Your Honor should include the whole reasonable doubt instruction ... where it's mentioned."

The court responded:

The reasonable doubt, in some of the Patterns, although not in any of the ones here, they add each element beyond a reasonable doubt as the nature of the instruction. But there is a separate instruction and quite frankly I instructed the jury at the ... initiation of this case as to ... presumption of innocence and reasonable doubt and I don't think that it's necessary that that be repeated for each ... offense.

Ultimately, the court instructed the jury pursuant to MPJI–CR 2:02, modifying the instruction by adding that the jury must be convinced beyond a reasonable doubt that appellant was guilty "of each charge." The trial court instructed the jury as follows:

Mr. Carroll is presumed to be innocent of the charges. This presumption remains on Mr. Carroll throughout every stage of the trial and is not overcome unless you are convinced beyond a reasonable doubt that the Defendant is guilty **of each charge.** The State has the burden of proving the guilt of the Defendant beyond a reasonable doubt. This burden remains on the State throughout the trial. The Defendant is not required to prove his innocence. However the State is not required to prove guilt beyond all possible doubt or to a mathematical certainty. Nor is the State required to negate every conceivable circumstance of innocence. A reasonable doubt is a doubt founded upon reason. Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs. However if you are not satisfied of the Defendant's guilt to that extent than [sic] reasonable doubts exists [sic] and your verdict must be not guilty.

(Emphasis added).

The court then instructed the jury as to each of the charged offenses. In doing so, the court stated, for each charge, with the exception of conspiracy, as follows: "In order to convict

the Defendant of [name of offense] the State must prove . . . ."
The court then listed each element of the offense.

For example, when instructing the jury on robbery, the court stated:

Robbery is the taking and carrying away the property from someone by force or threat of force with the intent to deprive the victim of the property. In order to convict the Defendant of robbery the State must prove that the Defendant took the property from [the victim] and from his presence and control, that he took the property by force or threat of force, and that he intended to deprive the victim of that property.

With respect to conspiracy, the court did not give the pattern instruction.[3] It instructed the jury as follows:

[A] conspiracy is an agreement between two or more persons to commit a crime. And a conspiracy is in itself a separate crime. It exists when two or more persons enter into an agreement to accomplish a criminal or unlawful purpose. In order for a person to be guilty of this offense the State must prove beyond a reasonable doubt that the Defendant or one or more other persons entered into an agreement, that the object of the agreement was criminal or unlawful, and that there was a joint intent to enter into this agreement.

## B.

### Explicit Instruction on Burden to Prove Every Element Beyond a Reasonable Doubt

Appellant contends that the court's instructions, apart from

---

3. MPJI–CR 4:08 provides:

The defendant[s] is[are] charged with the crime of conspiracy to [___]. Conspiracy is an agreement between two or more persons to commit a crime. In order to convict the defendant[s] of conspiracy, the State must prove:
(1) that the defendant[s] entered into an agreement with at least one other person to commit the crime of (*crime*); and
(2) that the defendant[s] entered into the agreement with the intent that (*crime*) be committed.

the instructions on the conspiracy charges, were erroneous.[4] He argues that, although the court instructed the jury that the State had the burden to prove his guilt beyond a reasonable doubt, and it instructed pursuant to MPJI–CR 2:02, as required by *Ruffin v. State*, 394 Md. 355, 357, 373, 906 A.2d 360 (2006), "the Constitution and Maryland law require more," specifically an instruction that each element of every charged offense must be proven beyond a reasonable doubt. Appellant asserts that Due Process requires such an instruction.

The State contends that the court did not "err when it instructed the jury pursuant to the pattern instruction on reasonable doubt rather than adopting the non-pattern instruction proposed by [appellant]." It argues that "[t]he reasonable doubt instruction, considered in conjunction with the instructions given to the jury as to each criminal offense, sufficiently instructed the jury that they must find each element of the crime beyond a reasonable doubt." The State asserts that the court was not required to give appellant's requested instruction because the matter was fairly covered by the instructions given.

Maryland Rule 4–325(c) provides that, at the request of any party, the court "shall" instruct the jury regarding the applicable law. Pursuant to this rule, however, "[t]he court need not grant a requested instruction if the matter is fairly covered by instructions actually given." *Id.*

 In reviewing a trial court's refusal to give a requested instruction, an appellate court looks to three factors. We must determine whether the requested instruction: (1) constitutes a correct statement of the law; (2) is applicable under the facts of the case; and (3) has been fairly covered by the instructions given. *Cost v. State*, 417 Md. 360, 368–69, 10 A.3d 184 (2010); *Evans v. State*, 174 Md.App. 549, 567, 922 A.2d 620, *cert. denied*, 400 Md. 648, 929 A.2d 890 (2007). Although

---

**4.** Appellant concedes that the instruction on the conspiracy charges, which did advise explicitly that the State must prove beyond a reasonable doubt the elements of the offense, was proper and does not warrant reversal of his conspiracy convictions.

we review a trial court's decision not to give a proposed jury instruction under an abuse of discretion standard, the court's decision will be reversed if the defendant's rights were not adequately protected. *Cost,* 417 Md. at 369, 10 A.3d 184.

■ Both parties agree that the requested instruction was a correct statement of the law. It is well established that the State must prove beyond a reasonable doubt each element of a charged offense. *See Sullivan v. Louisiana,* 508 U.S. 275, 277–78, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) ("The prosecution bears the burden of proving all elements of the offense charged, and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements.") (citations omitted); *Savoy v. State,* 420 Md. 232, 246, 22 A.3d 845 (2011) ("The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the State to prove every element of an offense charged beyond a reasonable doubt.").

■ Similarly, there is no dispute that the beyond a reasonable doubt standard was applicable here, as it is in every criminal trial. As the Court of Appeals noted in *Ruffin,* 394 Md. at 372, 906 A.2d 360, "the presumption of innocence and the reasonable doubt principles do not change from case to case. The identical principles are applicable in every criminal jury trial, regardless of the issues in that particular trial."

■ The Supreme Court has made clear, however, that no "particular form of words" must be used in advising the jury regarding the State's burden of proof beyond a reasonable doubt. *Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). The issue in this case, therefore, is whether appellant's requested instruction was fairly covered by the instructions given.

■ The court's instruction on the presumption of innocence and reasonable doubt stated, *inter alia,* that "[t]he State has the burden of proving the guilt of the Defendant beyond a reasonable doubt." The instruction on the specific charges then stated: "In order to convict the defendant of _____, the

State must prove . . .," followed by a list of the elements of each offense. Read together, the instructions advised the jury that the State must prove each element of the offense beyond a reasonable doubt.

Other courts similarly have upheld instructions that did not contain the explicit advice requested here. *See People v. Orchard,* 17 Cal.App.3d 568, 95 Cal.Rptr. 66, 71 (1971) (instruction regarding State's burden to prove each element beyond a reasonable doubt was not required where the court instructed on the State's burden of proof beyond a reasonable doubt and then defined the essential elements of the crime charged); *City of Billings v. Briner,* 228 Mont. 518, 744 P.2d 877, 878 (1987) (where the court instructed that the government had the burden to prove defendant's guilt beyond a reasonable doubt and then instructed as to the elements of the crime, no error in failing to specifically instruct that the prosecutor must prove each and every element of the offense beyond a reasonable doubt).

Moreover, we note that appellant is asking us to hold that MPJI–CR 2:02 does not meet constitutional requirements. In *Ruffin,* however, the Court of Appeals not only approved of this pattern instruction, it held that, "in every criminal jury trial, the trial court is required to instruct the jury on the presumption of innocence and the reasonable doubt standard of proof which closely adheres to MPJI–CR 2:02. Deviations in substance will not be tolerated." 394 Md. at 373, 906 A.2d 360. *Accord Merzbacher v. State,* 346 Md. 391, 404, 697 A.2d 432 (1997) ("[W]e strongly recommend that trial courts closely adhere to the reasonable doubt instruction . . . articulated in [MPJI]-CR 2:02.").

In light of the Court of Appeals' admonition to trial courts to instruct on reasonable doubt in accordance with MPJI–CR 2:02, and because the instructions as a whole made clear that the State had the burden of proving each element of each offense beyond a reasonable doubt, we find no abuse of discretion by the trial court in declining to give appellant's requested instruction. We hold that the failure to instruct the

jury explicitly that the State's burden of proof applies to each element of each offense is not error, as long as this burden of proof is clear from the instructions as a whole. Appellant is not entitled to a new trial on this ground.[5]

## II. Sufficiency of the Evidence

Appellant next contends that the evidence was insufficient to support his four convictions for conspiracy to commit armed robbery. He argues that "the State presented absolutely no direct evidence that could support a finding that he entered into an agreement to commit an armed robbery," and that the circumstantial evidence presented by the State "belies any suggestion that the three had a pre-existing agreement to commit armed robbery."

The State contends that there was sufficient evidence to support appellant's convictions. It argues that appellant and the other men "acted in concert," and a conspiracy to rob can be implied from their actions.

 In reviewing a claim regarding the sufficiency of the evidence, an appellate court must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "

---

5. Although we find no error by the court here, that is not to say that it would not be reasonable for trial courts to give the instruction requested and explicitly state that the prosecution has the burden to prove beyond a reasonable doubt each element of each charge. Other jurisdictions include such language in their pattern jury instructions on the presumption of innocence and/or the burden of proof. *See, e.g.*, Alaska Crim. Pattern Jury Instruction 1.06; Ark. Model Jury Instructions— Crim. 107; Haw. Standard Crim. Jury Instructions No. 3.02; 1–6 Me. Jury Instruction Manual § 6–7; Okla. Uniform Jury Instructions— Crim. 10–4; Model Utah Jury Instructions—Crim. 102; 1–2 Va. Model Jury Instructions—Crim. No. 2.100; Wash. Pattern Jury Instructions— Crim. 4.01. *See also* DAVID E. AARONSON, MARYLAND CRIMINAL JURY INSTRUC-TIONS AND COMMENTARY § 1.02 (2nd ed. 1988). We suggest that the Maryland State Bar Association Committee on Maryland Pattern Jury Instructions consider whether to amend MPJI–CR 2:02 to provide explicitly that the State has the burden to prove each element of the charge beyond a reasonable doubt.

*Smith v. State,* 415 Md. 174, 184, 999 A.2d 986 (2010) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In reviewing the evidence, " '[i]t is not our role to retry the case.' " *State v. Mayers,* 417 Md. 449, 466, 10 A.3d 782 (2010) (quoting *Smith,* 415 Md. at 185, 999 A.2d 986). *Accord State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336 (1994) ("[I]t is not the function or duty of the appellate court to undertake a review of the record that would amount to, in essence, a retrial of the case."). Rather, " '[b]ecause the fact-finder possesses the unique opportunity to view the evidence and to observe first-hand the demeanor and to assess the credibility of witnesses during their live testimony, we do not re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence.' " *Mayers,* 417 Md. at 466, 10 A.3d 782 (quoting *Smith,* 415 Md. at 185, 999 A.2d 986). "We defer to any possible reasonable inferences the jury could have drawn from the admitted evidence and need not decide whether the jury could have drawn other inferences from the evidence, refused to draw inferences, or whether we would have drawn different inferences from the evidence." *Id.*

The Court of Appeals has summarized the elements of a conspiracy as follows:

A criminal conspiracy consists of the combination of two or more persons to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means. The essence of a criminal conspiracy is an unlawful agreement. The agreement need not be formal or spoken, provided there is a meeting of the minds reflecting a unity of purpose and design. In Maryland, the crime is complete when the unlawful agreement is reached, and no overt act in furtherance of the agreement need be shown.

*Khalifa v. State,* 382 Md. 400, 436, 855 A.2d 1175 (2004) (quoting *Townes v. State,* 314 Md. 71, 75, 548 A.2d 832 (1988)). " '[I]t is sufficient if the parties tacitly come to an understanding regarding the unlawful purpose.... [T]he State [is] only required to present facts that would allow the jury to infer that the parties entered into an unlawful agreement.' " *Arm-*

*stead v. State,* 195 Md.App. 599, 646, 7 A.3d 169 (2010) (quoting *Acquah v. State,* 113 Md.App. 29, 50, 686 A.2d 690 (1996)), *cert. denied,* 418 Md. 191, 13 A.3d 798 (2011). A conspiracy may be shown by " 'circumstantial evidence from which an inference of common design may be drawn.' " *Id.* (quoting *McMillian v. State,* 325 Md. 272, 292, 600 A.2d 430 (1992)).

Here, there was sufficient evidence to support the jury's finding that appellant engaged in a conspiracy to rob the victims. Appellant went to the victims' campsite, carrying a machete, with the other two men who were carrying a machete and a bat. The victims interpreted the visit as indicating that "there would be trouble." The men left and then returned to the campsite, together, approximately 15 to 20 minutes later, still brandishing the weapons. The men immediately told the teenagers to "get the fuck out of the tent and give us everything you have." Appellant then held his machete to the ankles of the two boys as they exited the tent, which was interpreted by the boys as a way to stop them from running.

These actions show that the men were acting in concert. Indeed, during the encounter, appellant, Mr. Cann, and Mr. Lee discussed together whether to take the victims to the ATM, illustrating that the men were acting in agreement and pursuant to a collective decision. Moreover, the victims testified that appellant appeared to be the man in charge of the group.

This evidence was sufficient for the jury to reject appellant's statement to the police that he was a passive bystander and to imply from appellant's actions a conspiracy with the other men to rob. There was sufficient evidence to support appellant's convictions for conspiracy to commit armed robbery.

### III. Post–Arrest Statements

Appellant next argues that the court erred in admitting a recording of his interview with the police after he was arrested. He contends that his post-arrest interrogation violated

*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because the police continued to question him after he "unambiguously invoked his Fifth Amendment right to remain silent."

The State contends that this issue is not properly before this Court for review. It argues that, "not only did [appellant] fail to preserve his *Miranda* challenge, but he affirmatively waived that challenge."

▮▮▮▮ Pursuant to Maryland Rule 8–131(a), an appellate court ordinarily will not decide an issue "unless it plainly appears by the record to have been raised in or decided by the trial court." This rule "serves to prevent the unfairness that could arise when a party raises an issue for the first time on appeal, thus depriving the opposing party from admitting evidence relating to that issue at trial." *Wilkerson v. State,* 420 Md. 573, 597, 24 A.3d 703 (2011). *Accord Robinson v. State,* 410 Md. 91, 103, 976 A.2d 1072 (2009) ("Fairness and the orderly administration of justice is advanced 'by "requiring counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct[,] any errors in the proceedings." ' ") (quoting *State v. Bell,* 334 Md. 178, 189, 638 A.2d 107 (1994)).

Here, counsel for appellant initially filed a motion to suppress his statements to the police. At the beginning of trial, however, appellant's counsel withdrew the motion. In this regard, the following occurred:

> [DEFENSE COUNSEL]: ... I will note that there is a statement given, an extensive statement that was given, however I have viewed that statement ... it was videotaped and recorded so I viewed that, and other than a headlamp, um, that fits on the head, uh, I don't know that there was anything else taken from my client. And based on my view of the videotape, Your Honor, there's certainly, he gave the statement, there's certainly nothing there that I think in, in my opinion was improper, uh, worthy of a motion. So I would withdraw.

THE COURT: Formally note the motion to suppress is withdrawn.

At trial, defense counsel objected to the admission of the first part of the statement on the ground that it was not relevant. He argued that the only purpose in introducing that part of the statement, in which appellant denied that he was present at the victims' campsite, was to show that appellant was a liar, which counsel asserted was not appropriate because appellant was not going to testify. In response, the court stated:

> Defendant's statement surrounding the accusations at issue is relevant and is admissible so long as it is not involuntary under the Fifth Amendment or is taken in violation of the Defendant's rights under Miranda.... What has been presented to me is the Defendant made a statement that evening surrounding the accusations and that that statement in its entirety, including changes in his story, would be relevant on numerous issues and that the only justification for excluding the statement of the Defendant would be if, again if it was involuntary in the constitutional sense, or it was taken in violation of Miranda. Neither of those matters has been raised and quite honestly we did not have a suppression hearing, the Court has not reviewed the statement.

Appellant acknowledges that his claim that his statements should have been suppressed pursuant to *Miranda* is not preserved, noting that "trial counsel withdrew a motion to exclude the recording prior to trial." He argues, however, that "this Court should review the admission of this evidence for plain error." In support, appellant argues that the admission of his statement was "highly prejudicial" because it "undermined his strategic decision—and his constitutional right—not to testify at trial." He further argues that plain error review is warranted "to clarify the impact of the Supreme Court's recent decision in [*Berghuis v. Thompkins*, ——— U.S. ———, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010) ] on interrogations by Maryland law enforcement officials."

The State contends that plain error review is not available to appellant because he affirmatively waived his *Miranda* challenge. It argues that "counsel made the intentional decision not to raise any constitutional challenges to the statement," which affirmatively waived the right to have the issue considered on appeal. The State further argues that, given the lack of a suppression hearing, "this Court simply cannot conduct the review requested by [appellant] because the record is incomplete."

Both parties refer to cases addressing plain error review in the context of jury instructions. In that context, and in the context of other trial errors, the Court of Appeals has discussed the interplay between waiver and plain error review, and it has made clear that issues that a party has affirmatively waived are not subject to plain error review. *State v. Rich*, 415 Md. 567, 578–80, 3 A.3d 1210 (2010). The Court explained the difference between forfeiture, which is "the failure to make a timely assertion of a right," and waiver, which is the "intentional relinquishment or abandonment of a known right." *Id.* at 580, 3 A.3d 1210 (quoting *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). It held that " '[f]orfeited rights are reviewable for plain error, while waived rights are not.' " *Id.* (quoting *United States v. Perez*, 116 F.3d 840, 845 (9th Cir.1997)) (emphasis omitted).[6]

In the present case, the claim of error does not involve a jury instruction or other trial errors. Rather, the claim involves an argument that an alleged unlawfully obtained statement should have been suppressed, an issue that is required to be raised pretrial.

Pursuant to Md. Rule 4–252(a), a claim regarding "[a]n unlawfully obtained admission, statement, or confession,"

---

6. In *State v. Rich*, 415 Md. 567, 581, 3 A.3d 1210 (2010), the Court held that, where defense counsel made a specific request for an instruction on voluntary manslaughter, that was an intentional waiver of the right to argue on appeal that the evidence was insufficient to submit the issue of voluntary manslaughter to the jury.

"shall be raised by motion" prior to trial, and if not so raised, it is waived, absent a showing of good cause.[7] This Court has explained that a failure to raise a suppression issue below constitutes a waiver in several contexts: (1) if the defendant fails to comply with the time requirements for filing a motion under the rule; (2) if the defendant files a notice but fails to pursue it; and (3) if there is a hearing on the motion, but the defendant fails to present any grounds to support the motion. *Jackson v. State,* 52 Md.App. 327, 331–32, 449 A.2d 438, *cert. denied,* 294 Md. 652 (1982). *Accord Perry v. State,* 344 Md. 204, 227, 686 A.2d 274 (1996) (defendant waived suppression issue by failing to raise it prior to trial), *cert. denied,* 520 U.S. 1146, 117 S.Ct. 1318, 137 L.Ed.2d 480 (1997). Neither party cites a case addressing whether plain error review applies in the context of the failure to raise a suppression issue subject to the rule.

In *Kohr v. State,* 40 Md.App. 92, 98, 388 A.2d 1242, *cert. denied,* 283 Md. 735 (1978), this Court stated that the Court of Appeals decided, "as a matter of judicial policy," to make Rule 736, the predecessor to Rule 4–252, parallel to Rule 12 of the Federal Rules of Criminal Procedure ("FED. R.CRIM.P."). We stated: "Both rules are identical in that they require that

---

7. Rule 4–252 provides, in pertinent part, as follows:

(a) **Mandatory motions.** In the circuit court, the following matters shall be raised by motion in conformity with this Rule and if not so raised are waived unless the court, for good cause shown, orders otherwise:

(1) A defect in the institution of the prosecution;

(2) A defect in the charging document other than its failure to show jurisdiction in the court or its failure to charge an offense;

(3) An unlawful search, seizure, interception of wire or oral communication, or pretrial identification;

(4) An unlawfully obtained admission, statement, or confession; and

(5) A request for joint or separate trial of defendants or offenses.

(b) **Time for filing mandatory motions.** A motion under section (a) of this Rule shall be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 4–213(c), except when discovery discloses the basis for a motion, the motion may be filed within five days after the discovery is furnished.

motions to suppress be filed pre-trial and both consider a failure to raise timely objections to the admissibility of unlawfully seized evidence to constitute a waiver." *Id.*

Because the Maryland rule is parallel to the federal rule, we look to federal decisions addressing the effect of a failure to raise a suppression issue pursuant to Fed.R.Crim.P. 12. Several courts have analyzed in detail whether such a failure constitutes: (1) a forfeiture subject to plain error review; or (2) a waiver that cannot be reviewed absent good cause.

In *United States v. Rose*, 538 F.3d 175, 177–84 (3d Cir.2008), the United States Court of Appeals for the Third Circuit stated that " 'the prevailing rule is that the failure to assert a particular ground [for suppression] operates as a waiver of the right to challenge the admissibility of the evidence on that ground.' " *Id.* at 180 (quoting 6 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.2(a) (4th ed. 2004)). The court noted, however, that "courts have not always applied this rule consistently." *Id.*

In *Rose*, the Court held that, pursuant to Fed.R.Crim.P. 12, "a suppression argument raised for the first time on appeal is waived (*i.e.*, completely barred) absent good cause." *Id.* at 182. The Court explained that its holding applied "not only where the defendant failed to file a suppression motion at all in the district court, but also where he filed one but did not include the issues raised on appeal." *Id.*

The court explained that the specific waiver provision of Fed.R.Crim.P. 12 prevailed over the general provision of Fed. R.Crim.P. 52(b) providing for plain error review. *Id.* at 183.[8] It noted that Fed.R.Crim.P. 12(e) "singles out motions to suppress, stating that a 'party *waives* any [suppression] defense, objection, or request not raised by the [pretrial] deadline the court sets,' " and it cited to the " 'well-settled maxim

---

**8.** Federal Rule of Criminal Procedure 52(b) provides: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

that specific statutory provisions prevail over more general provisions.' " *Id.* (quoting *Chavarria v. Gonzalez,* 446 F.3d 508, 517 (3d Cir.2006)).

Other courts similarly have rejected plain error review of a suppression issue that was not raised below, holding that the failure to comply with FED.R.CRIM.P. 12 constitutes a waiver of the issue on appeal. *See United States v. Burke,* 633 F.3d 984, 991 (10th Cir.), *cert. denied,* —— U.S. ——, 131 S.Ct. 2130, 179 L.Ed.2d 919 (2011); *United States v. Chavez–Valencia,* 116 F.3d 127, 129–32 (5th Cir.), *cert. denied,* 522 U.S. 926, 118 S.Ct. 325, 139 L.Ed.2d 252 (1997); *United States v. Wright,* 215 F.3d 1020, 1026 (9th Cir.), *cert. denied,* 531 U.S. 969, 121 S.Ct. 406, 148 L.Ed.2d 313 (2000).

In *Burke,* 633 F.3d at 989–90, the United States Court of Appeals for the Tenth Circuit explained the policy rationale behind the rule providing that an issue not raised below is waived, absent a showing of good cause for the failure to raise the issue. It stated, in part, as follows:

> [I]n most circumstances "fairness concerns" militate in favor of a waiver rule because " 'although the government can appeal an adverse ruling on a suppression motion prior to trial, it cannot do so once jeopardy has attached.' " *Id.* (quoting *[United States v.] Brooks,* 438 F.3d [1231] at 1240 [ (10th Cir.2006) ] ); *see also Rose,* 538 F.3d at 183 (citing *Chavez–Valencia,* 116 F.3d at 132). Moreover, if "a defendant has not raised a suppression issue before the district court, the Government (under an assumption that its proffered evidence was admissible) may plausibly conclude during trial that it does not need to accumulate and introduce additional evidence to prevail." *Rose,* 538 F.3d at 183. Finally, allowing a defendant to challenge the inclusion of evidence on appeal places the government in the difficult position of "defending itself based on a potentially meager record." *Brooks,* 438 F.3d at 1240.

The Court explained that the good cause exception protects against a miscarriage of justice. *Id.* at 991. It explained, however, that relief under this exception would be rare. *Id.* at

988. Where there was sufficient information available to allow counsel to raise the issue, good cause would not be found. *Id.* In that circumstance, the issue would be deemed waived, and plain error review was precluded. *Id.*

We believe that this analysis is appropriate when addressing the failure to file a motion to suppress pursuant to Md. Rule 4–252. As indicated, Rule 4–252 was drafted, "as a matter of judicial policy," to be parallel to FED.R.CRIM.P. 12. *Kohr,* 40 Md.App. at 98, 388 A.2d 1242. Rule 4–252(a) specifically provides, as does the federal rule, that a failure to raise a suppression issue in the trial court in a timely manner waives the issue, absent good cause.

█ Accordingly, for the reasons set forth by the federal courts, listed *supra,* we hold that, if a defendant fails to raise a ground seeking suppression of evidence, which is required to be raised pre-trial by Rule 4–252, the defendant has waived his or her right to appellate review of that issue. Plain error review generally is not applicable, and an appellant seeking review must show good cause for the failure to raise the issue in the circuit court.[9]

█ Moreover, we note that, in this case, there was more than the mere failure to argue below that appellant's statement to the police should have been suppressed. There was an affirmative waiver of the issue. As indicated, appellant initially filed a motion to suppress the statements. At the beginning of the trial, however, counsel affirmatively withdrew the motion, stating that, based on his view of the videotape, "there's certainly nothing there that ... in my opinion was improper, uh, worthy of a motion."

---

**9.** If an appellant is unable to show good cause, he or she is not necessarily deprived of all opportunity to review the propriety of the conviction. The defendant may be able to seek review of his or her claim in a post-conviction proceeding pursuant to Md.Code (2008 Repl.Vol., 2011 Supp.) §§ 7–101 to 7–301 of the Criminal Procedure Article.

 This Court specifically has stated that withdrawing a motion, an affirmative act of commission as opposed to an act of omission, constitutes a waiver rather than a forfeiture. *Green v. State,* 81 Md.App. 747, 759, 569 A.2d 741, *cert. denied,* 320 Md. 16, 575 A.2d 743 (1990). At least one other court has agreed that the withdrawal of a motion to suppress constitutes a waiver precluding appellate review. *See United States v. Sheppard,* 149 F.3d 458, 461 (6th Cir.1998) (defendant waived his suppression argument by withdrawing his motion to suppress prior to trial, and therefore, the court was without jurisdiction to consider the argument).

 Under the circumstances here, appellant's claim is waived. It is not subject to plain error review.

 Even when a claim is waived, however, there are circumstances where appellate review is available. As indicated, a court may review a claim based upon a showing of good cause for failing to raise the issue. One circumstance in which this Court has reviewed a suppression issue that was not raised below is where there has been a change in the law after trial. *McCain v. State,* 194 Md.App. 252, 277–78, 4 A.3d 53 (2010). *Accord Hays v. State,* 240 Md. 482, 485, 214 A.2d 573 (1965).

Appellant's only suggestion of good cause, albeit presented on appeal as a ground for plain error review, is that his argument on appeal is based on the Supreme Court's recent decision in *Berghuis.* He appears to be arguing that *Berghuis* made new law, asserting that it "broke new ground and called this Court's prior *Miranda* caselaw into question." As appellant notes, however, *Berghuis* was decided "several months prior to [appellant's] trial."[10] Even assuming, *arguendo,* that *Berghuis* constituted a change in the law relevant to the issue he raises on appeal, it was not a change **subsequent** to his trial that would justify review pursuant to *McCain,* 194 Md.

---

10. *Berghuis v. Thompkins,* —— U.S. ——, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010), was decided on June 1, 2010, and appellant's trial began on October 26, 2010.

App. at 277–78, 4 A.3d 53, and *Hays,* 240 Md. at 485, 214 A.2d 573. There has been no showing of good cause for the failure to move to suppress appellant's statement to the police based on a violation of *Miranda.*[11]

Appellant waived his right to challenge the admissibility of his statement to the police. We will not address his claim in this regard.

## IV. Merger

Appellant's final contention is that the circuit court erred in failing to merge or vacate various convictions. He makes three arguments in this regard. First, appellant argues that the court erred in refusing to merge his conspiracy convictions with his convictions for attempted armed robbery pursuant to the doctrine of fundamental fairness. Second, appellant contends that "the court improperly imposed four conspiracy sentences, despite the fact that all agreed that the evidence established only a single conspiracy." Third, appellant argues that his conviction on count 24, second degree assault, should be vacated because the "jury neglected to read a verdict on this count in open court."

The State agrees with appellant's latter two arguments. It concedes that the four conspiracy counts should have been merged for sentencing purposes. The State also agrees that "[t]he jury did not read the verdict on count 24 [second degree

---

**11.** The State suggests the appellant had tactical reasons to waive his constitutional challenge to appellant's post-arrest statement. It asserts that part of appellant's "trial strategy was to attempt to minimize [appellant's] exposure at sentencing by prompting the jury to find him guilty of only two of the twenty-seven counts that he was indicted upon. Part of [appellant's] strategy at trial was to depict himself as an honest man who cooperated with the police because he had nothing to hide." It points to the following statements that defense counsel made during closing argument:

> In the end he took responsibility. In the end he walked up to the police. Now the State may try to minimize that. . . . But he still turned himself in. He was reluctant to talk at first and he said it best to the officers. You know, you got me here talking. You're pulling it out of me. You just gotta keep on pulling and what I don't know you're gonna have to pull out of the other guys.

assault] in open court, and therefore, pursuant to *Jones v. State,* 384 Md. 669, 866 A.2d 151 (2005), that conviction should in fact be vacated." The State disagrees, however, with appellant's argument that the convictions for attempted armed robbery and conspiracy merge pursuant to the doctrine of fundamental fairness.

### A.

### Merger of Convictions for Conspiracy to Commit Armed Robbery and Attempted Armed Robbery

Maryland courts recognize three grounds for merging a defendant's convictions: (1) the required evidence test; (2) the rule of lenity; and (3) principles of fundamental fairness. *Kelly v. State,* 195 Md.App. 403, 440–42, 6 A.3d 396 (2010), *cert. denied,* 417 Md. 502, 10 A.3d 1181, *cert. denied,* —— U.S. ——, 131 S.Ct. 2119, 179 L.Ed.2d 912 (2011); *Monoker v. State,* 321 Md. 214, 219, 222–23, 582 A.2d 525 (1990). Appellant concedes, appropriately, that his conspiracy and attempted armed robbery convictions would not merge under either the required evidence test or the rule of lenity.

As this Court recently explained:

The Maryland appellate courts have consistently declined to merge a conviction for conspiracy with a conviction for the substantive offense under the required evidence test or the rule of lenity. *See, e.g., Khalifa,* 382 Md. [400,] 437 [855 A.2d 1175 (2004) ] (conspiracy to detain a child and accessory to detain a child); *Grandison v. State,* 305 Md. 685, 759, 506 A.2d 580 (1986) (conspiracy to murder and murder), *cert. denied,* 519 U.S. 1027, 117 S.Ct. 581, 136 L.Ed.2d 512 (1996); *Wooten–Bey v. State,* 76 Md.App. 603, 628–30, 547 A.2d 1086 (1988) (conspiracy to rob and attempted robbery), *aff'd on other grounds,* 318 Md. 301, 568 A.2d 16 (1990); *Murray v. State,* 89 Md.App. 626, 634–35, 599 A.2d 465 (1991) (conspiracy to distribute cocaine and distribution). The rationale behind these decisions is that "a substantive offense is generally distinct from the act of conspiracy to

commit the offense." *Khalifa,* 382 Md. at 436 [855 A.2d 1175].

*Kelly,* 195 Md.App. at 441, 6 A.3d 396.

In *Wooten–Bey,* this Court explained that the Maryland General Assembly clearly intended to punish the crimes of attempted armed robbery and conspiracy separately:

> We thus have two separate criminal acts for which the Legislature has provided distinct punishments. Appellant presents us with no case law or legislative history suggesting that the Legislature did not intend to punish both of these criminal acts, nor can it be seriously argued that an ambiguity exists when the statutes are applied in tandem. It makes sense that, because the two crimes and penalties address different criminal behavior, separate sentences be imposed. In the instant case, appellant received the first 10–year sentence for *planning* the robbery. The second sentence imposed for the attempt was for the steps appellant took toward *consummating* that plan.

76 Md.App. at 629–30, 547 A.2d 1086.

Appellant argues, nevertheless, that the convictions should merge under the doctrine of fundamental fairness. The Court of Appeals has explained that "[o]ne of the most basic considerations in all our decisions is the principle of fundamental fairness in meting out punishment for a crime." *Monoker,* 321 Md. at 223, 582 A.2d 525. The cases in which fundamental fairness warranted merger, however, involved situations where one crime was "an integral component of" or "incidental to" the other crime. *See id.* at 223–24, 582 A.2d 525 (solicitation was "part and parcel of the ultimate conspiracy and thereby an integral component of it"); *Marquardt v. State,* 164 Md.App. 95, 153, 882 A.2d 900 ("the malicious destruction of property was clearly incidental to the breaking and entering of [the dwelling]"), *cert. denied,* 390 Md. 91, 887 A.2d 656 (2005). This Court has made clear, however, that "conspiracy is not 'part and parcel' of or 'incidental to' the substantive offense; it is a separate offense." *Kelly,* 195 Md.App. at 442, 6 A.3d 396.

 In *Kelly*, we held that principles of fundamental fairness do not prevent separate sentences for the separate offenses of robbery and conspiracy to commit robbery. *Id.* The crimes address different criminal behavior and warrant separate sentences. *Id.* The same rationale applies to the crimes of conspiracy to commit armed robbery and attempted armed robbery. The circuit court properly refused to merge appellant's conspiracy convictions with his convictions for attempted robbery.

## B.

### Merger of Conspiracy Convictions

 With respect to the argument that the four conspiracy counts should have merged for sentencing purposes, the parties agree that the sentences should merge, and so do we. *See Wilson v. State,* 148 Md.App. 601, 640–41, 814 A.2d 1 (2002) (merging conspiracy counts in regard to multiple victims), *cert. denied,* 374 Md. 84, 821 A.2d 371 (2003); *Tracy v. State,* 319 Md. 452, 459, 573 A.2d 38 (1990) ("It is well settled in Maryland that only one sentence can be imposed for a single common law conspiracy no matter how many criminal acts the conspirators have agreed to commit. The unit of prosecution is the agreement or combination rather than each of its criminal objectives.").

 Appellant argues, however, that rather than vacating the sentences for three of the conspiracy convictions, we must remand for a new sentencing hearing, where appellant *"must be allowed to present mitigating evidence and argument at resentencing."* In support, he cites *Jones v. State,* 414 Md. 686, 703, 997 A.2d 131 (2010). In that case, where this Court remanded "for imposition of a new sentence," the Court of Appeals held that the defendant was entitled to present mitigating evidence and argument at the resentencing. *Id.* Typically, however, where merger is deemed to be appropriate, this Court merely vacates the sentence that should be merged without ordering a new sentencing hearing. *See, e.g., Washington v. State,* 200 Md.App. 641, 664, 28 A.3d 164 (2011);

*Moore v. State,* 198 Md.App. 655, 718, 18 A.3d 981 (2011). We shall do the same here and vacate three of the sentences for conspiracy.

## C.

### Count 24

Appellant contends that his conviction on Count 24 should be vacated because, "[a]lthough the verdict sheet suggests that the jury may have voted to convict [appellant] on [Count] 24, which alleged second degree assault, the jury neglected to read a verdict on this count in open court." The State agrees with appellant, stating that "[t]he jury did not read the verdict on count 24 in open court," and therefore, pursuant to *Jones,* 384 Md. at 669, 866 A.2d 151, this conviction should be vacated.[12]

In *Jones,* the Court of Appeals held that a verdict in a criminal case is considered final only after it has been announced orally, and "a sentence is illegal if based upon a verdict of guilt that is not orally announced in open court in order to permit the jury to be polled and hearkened to the verdict." *Id.* at 672, 866 A.2d 151. In that case, the Court concluded that, "because the jury was not polled and hearkened to that Count in absence of its oral announcement, the verdict of guilt cannot stand and any sentence apportioned thereto must be vacated." *Id.* at 686, 866 A.2d 151.

Here, the verdict sheet indicates that the jury found appellant guilty of count 24. However, the jury did not read that verdict in open court. Therefore, the conviction should be vacated under *Jones.*

**CONVICTION ON COUNT 24 IS VACATED; THREE OF THE FOUR SENTENCES FOR CONSPIRACY ARE VACATED; JUDGMENTS OTHERWISE AFFIRMED.**

---

**12.** At sentencing, Count 24 was merged with the three other assault convictions.

**520**

COSTS TO BE PAID 75% BY APPELLANT AND 25% BY FREDERICK COUNTY.